STATE of Wisconsin, Plaintiff-Respondent,

v.

William JORGENSEN, Defendant-Appellant.

Court of Appeals

*No. 86–0742–CR. Submitted on briefs November 3, 1986.—
Decided February 4, 1987.*

(Also reported in 404 N.W.2d 66.)

■■■■■■■■■■■■

■■■■■■■

■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■
■■■■■■■■■

For the defendant-appellant the cause was submitted on the briefs of *Robert M. Courtney* of *Courtney, Pledl & Molter, S.C.,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *Barry Levenson,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  William Jorgensen appeals from a judgment of conviction and subsequent order denying his motion for resentencing. The sole issue on appeal relates to the state's alleged violation of an oral plea agreement under which the state was to remain silent at the time of Jorgensen's sentencing. Because we conclude that there was no violation of the plea agreement, we affirm.

On August 20, 1984, the Kenosha police were called to Jorgensen's residence because Jorgensen was threatening to kill himself with a shotgun. Jorgensen was arrested and charged, as a repeater, with possessing a firearm as a convicted felon pursuant to secs. 941.29(1), (2) and 939.62(1)(b), Stats. At the August 29, 1985 plea hearing, the state and Jorgensen's counsel entered into the following plea agreement:

165

MR. COAKLEY: I would like the record to reflect it is my understanding this matter is set for a plea and it is my understanding the defendant intends to plead guilty or no contest to possession of a firearm as a repeater and there is a joint recommendation that the Court order a pre-sentence in this matter, and *at the time of sentencing the State will remain silent.* [Emphasis added.]

MR. EGRE: That is a correct statement of the plea agreement, and pursuant to that, Mr. Jorgensen does enter a plea of no contest to the Information.

Prior to the passage of sentence, Jorgensen's counsel engaged in a lengthy oration of Jorgensen's problematic history which included details of the attempted suicide. In an effort to mitigate the seriousness of the charged offenses, Jorgensen's counsel pointed out that Jorgensen "didn't leave the residence with the shotgun[,] ... denies the shotgun was loaded, and ... *never discharged the shotgun.*" (Emphasis added.) At the conclusion of these comments, the state and Jorgensen's counsel had the following colloquy with the trial court:

MR. COAKLEY: Pursuant to the sentencing agreement, the State agreed to remain silent at sentencing. However, I believe I am placed in a difficult position because from what defense counsel said, there is a factual discrepancy as to the way the offense was described, and the State has facts contrary to the facts of this incident, the way the defendant described. Where I don't want to make a recommendation to the Court, that is an agreement, I feel as an Officer of the Court, if I do believe there is a discrepancy of facts, I should present it to the Court's attention.

MR. EGRE: I object to Mr. Coakley making any remarks with regard to sentence. The plea agreement was to remain silent and I would consider it to be a violation if he would make any further comment. If Mr. Coakley is making a comment as to the dispute as to whether or not the shot was fired, that is explained in the presentence and the gun was fired outside the door but Detective Kopesky indicated when he responded to the scene the shotgun was unloaded and Mr. Jorgensen denied he at any time discharged the shotgun.

THE COURT: Is that what you were going to bring up?

MR. COAKLEY: That is correct.

MR. EGRE: There is no claim whatsoever, I have never encountered any claim that anyone's safety was endangered if it was fired, but it is Mr. Jorgensen's position that shotgun was not fired.

The trial court proceeded to sentence Jorgensen to twenty months' incarceration.

At the hearing on his post-conviction motions, Jorgensen contended that the state's comments at the sentencing hearing constituted a breach of the plea agreement. Accordingly, Jorgensen requested that the court resentence him. The sentencing court found that the state did not violate the plea agreement and therefore denied Jorgensen's request.

Courts have frequently looked to contract law analogies in determining the rights of defendants allegedly violated in the plea negotiation process. *State v. Paske,* 121 Wis. 2d 471, 474, 360 N.W.2d 695, 697 (Ct. App. 1984). Most cases involving claimed breaches of plea agreements present a request that the agreement be vacated and that the plea be

withdrawn. *See State v. Bangert,* 131 Wis. 2d 246, 288–89, 389 N.W.2d 12, 32 (1986). In such cases, the party seeking to vacate the agreement must establish a material and substantial breach by clear and convincing evidence. *Id.* at 288, 389 N.W.2d at 32. This case is unique because Jorgensen does not seek to vacate the plea agreement and withdraw his plea. Rather, Jorgensen seeks enforcement of the plea agreement under his interpretation of it. In effect, Jorgensen seeks specific performance of the plea agreement.[1] Seeing no need to fashion a different rule, we first conclude that the burden applicable in a specific performance case such as here should be the same as in those cases where vacation of the agreement and plea is sought. Therefore, Jorgensen's burden was to show, by clear and convincing evidence, not only that a breach occurred, but also that it was material and substantial.

Specific performance is an equitable remedy which is left to the trial court's discretion. *Edlin v. Soderstrom,* 83 Wis. 2d 58, 70, 264 N.W.2d 275, 281 (1978). We will not overturn a trial court's refusal to order specific performance absent an abuse of discretion. *Negus v. Madison Gas & Elec. Co.,* 112 Wis. 2d 52, 62, 331 N.W.2d 658, 664 (Ct. App. 1983).

---

[1] Jorgensen relies heavily on *Santobello v. New York,* 404 U.S. 257 (1971), for his argument that the state's comments were in violation of the plea agreement. In *Santobello,* however, the prosecutor agreed to make no recommendation as to sentencing and then went on to recommend a maximum one-year sentence. *Id.* at 258, 259. Based on the facts of this case, we conclude that *Santobello* is distinguishable.

■ The trial court's refusal to grant Jorgensen a new sentencing hearing was based on the finding that the state's comments did not breach the plea agreement. Whether a breach of contract exists involves a question of fact. *Koenings v. Joseph Schlitz Brewing Co.,* 126 Wis. 2d 349, 358, 377 N.W.2d 593, 598 (1985). An abuse of discretion occurs when the trial court has made a mistake of fact. *Dean v. Dean,* 87 Wis. 2d 854, 877, 275 N.W.2d 902, 912 (1979). Findings of fact will not be overturned unless clearly erroneous. Section 805.17(2), Stats.

Jorgensen argues that the plea agreement obligated the state to remain silent at the sentencing proceeding and precluded the state from making any statements whatsoever. Conceding that this plea agreement is ambiguous and capable of being read so as to preclude any comment by the state at the sentencing hearing, we nonetheless conclude that a plea agreement which so broadly silences the state would contravene public policy.

■ A plea agreement violates public policy when it fails to furnish the public adequate protection, depreciates the seriousness of the offense or promotes disrespect for the law. *State ex rel. White v. Gray,* 57 Wis. 2d 17, 30, 203 N.W.2d 638, 644 (1973). A plea agreement which forces a prosecutor to stand mute regardless of the nature or accuracy of the statements made at the sentencing hearing runs contrary to the truth seeking purpose of all judicial proceedings. The public interest in pursuing this purpose would be undermined if an attorney, party or participant in a sentencing proceeding were able to misstate fact or law to the trial court without the countervailing

adversarial check of the opponent. *See Young v. State,* 49 Wis. 2d 361, 369, 182 N.W.2d 262, 266 (1971). Such plea agreements do not promote respect for the law and therefore are not entitled to enforcement in the courts.

When "[l]anguage ... is 'equally capable of two constructions, that construction which would safeguard the public interests, substantially, must be given preference to that construction which secures only insufficient or unsubstantial advantages to the public.'" *City of Madison v. Southern Wis. Ry. Co.,* 156 Wis. 352, 374, 146 N.W. 492, 500 (1914), *aff'd,* 240 U.S. 457 (1916). Here, the plea agreement is also capable of being read to require the state to refrain from commenting on the specific sentence. We must assume the parties attempted to enter into an enforceable contract and a construction favoring enforceability must be adopted. *Huntoon v. Capozza,* 57 Wis. 2d 447, 457, 204 N.W.2d 649, 655 (1973).

Moreover, custom or usage can serve to establish a meaning that the written words of a contract might not allow. *See* 3 A. Corbin, *Corbin on Contracts* § 555 at 232 (rev. perm. ed. 1960). This rule of construction also permits a court to interpret words in their usual and ordinary sense in the absence of evidence that they were otherwise used. *Id.* at 230. Here, the interpretation which legal minds would universally place upon a plea agreement of this sort would be that it precluded the state from recommending or commenting upon the specific sentence which the court should impose. No reasonable mind would conclude that the purpose of this plea agreement was to effectively and totally gag the state at the sentencing proceeding.

We therefore conclude that the trial court's construction of the plea agreement was not only in keeping with the requirements of public policy, but also consistent with the true intent of the parties.[2]

*By the Court.*—Judgment and order affirmed.

---

[2]Although the prosecutor's comments did not constitute a breach of the plea agreement under the facts of this case, this does not mean that prosecutorial comment as to matters not *specifically* aimed at the sentence could not, in a given case, be interpreted as relating to the sentence or designed to influence it. Such, however, is not the case here.