STATE of Wisconsin, Plaintiff-Respondent,†

v.

Dino Louis McQUAY, Defendant-Appellant.

Court of Appeals

*Nos. 88-0501-CR, 88-0502-CR, 88-0503-CR, 88-0504-CR, 88-0505-CR. Argued December 1, 1988.—Decided January 25, 1989.*

(Also reported in 436 N.W.2d 905.)

† Petition to review granted.

On behalf of the defendant-appellant, there were briefs and oral argument by *Richard D. Martin,* assistant state public defender.

On behalf of the plaintiff-respondent, there was a brief filed by *Donald J. Hanaway,* attorney general and *Barry M. Levenson,* assistant attorney general, with oral argument by *Barry M. Levenson.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Dino Louis McQuay appeals from judgments convicting him of five counts of first-degree sexual assault and from an order denying postconviction relief. McQuay entered *Alford*[1] pleas pursuant to a plea agreement, which provided that twenty-four other counts would be dismissed and would not be considered for sentencing purposes. McQuay argues that the state's reliance on a presentence report which contained information on the twenty-four dismissed counts resulted in a breach of the plea agreement.

Regardless of whether the state's reliance on the presentence report constituted a breach of the plea agreement, we conclude that McQuay must be resentenced. The agreement was contrary to public policy because it kept relevant information from the sentencing court. Because the trial court complied with the plea agreement and disregarded the dismissed counts, the sentence was void. On remand, the trial court must be able to consider the dismissed counts. Prior to resentencing, McQuay should be allowed to renew his motion to withdraw his pleas.

In January of 1987, at a succession of preliminary hearings, the trial court found probable cause to bind McQuay over on twenty-nine counts of first-degree sexual assault involving ten children ranging from approximately eight to thirteen years of age. On April 22, 1987, McQuay entered *Alford* pleas to five counts pursuant to a written plea agreement. The agreement provided that the state would recommend a twenty-year sentence with a ten-year term of probation. The agreement also stated that "[a]ll other counts originally filed ... are dismissed outright, are not read in, and will *not*

---

[1]An *Alford* plea admits that the prosecution has sufficient evidence to obtain a conviction but does not admit guilt. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970).

be considered for sentencing purposes." (Emphasis in original.) At the conclusion of the plea hearing, a presentence investigation was ordered.

The presentence report contained approximately ten pages of information relating to the charged offenses and recommended a longer sentence than twenty years. Prior to sentencing, defense counsel objected to the inclusion of this material as "extraneous, irrelevant, and prejudicial," but the trial court refused to excise anything from the report.

At sentencing, both the trial court and the prosecutor praised the presentence report. The trial court stated, however, that it would not consider the dismissed counts. The court also told McQuay, "If it weren't for the plea negotiation, after reading all those things here, there wouldn't be enough years for this Court to give you." The court sentenced McQuay to a thirty-year term of imprisonment followed by a twenty-year period of probation.

Agreements by prosecutors not to reveal relevant information to the sentencing judge are against public policy and cannot be respected by the courts. *Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186, 190 (1976). The conducting of a presentence investigation is to be insulated from plea bargains. *Farrar v. State,* 52 Wis. 2d 651, 656, 191 N.W.2d 214, 217 (1971). Any advance understanding between the prosecutor and defendant must not involve the trial court. *Id.* at 657, 191 N.W.2d at 217. At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement between the defendant and the state. *Elias v. State,* 93 Wis. 2d 278, 285, 286 N.W.2d 559, 562 (1980). Evidence of such character and

826

behavior includes unproven offenses, be they uncharged or pending. *Id.* at 284, 286 N.W.2d at 562.

■

The above authorities reveal a strong public policy of providing all relevant information to a trial court charged with the responsibility of sentencing a criminal defendant. Yet, the plea agreement in this case sought to frustrate that policy and asked the trial court to disregard pertinent matters. Plea agreements which are wholly against public policy cannot be respected by the courts. *See Grant,* 73 Wis. 2d at 448, 243 N.W.2d at 190. Therefore, it was error for the trial court to comply with this portion of the plea agreement.[2]

■

Because the trial court sentenced McQuay within the constraints of the plea agreement, the sentence is void. The trial court stated that it would not consider the information relating to the dismissed charges and that if it did, it would have imposed more than thirty years. Sentencing is done for the punishment and rehabilitation of the defendant *and* for the protection of the public. *See Elias,* 93 Wis. 2d at 284, 286 N.W.2d at 561. It follows, therefore, that if relevant information is kept from the sentencing court's consideration by a plea agreement, the public has been harmed.

This situation differs from *Grant.* There the trial court did consider the relevant information when sentencing, despite the agreement to the contrary. *Grant,* 73 Wis. 2d at 444, 446–47, 243 N.W.2d at 188,

[2]We would be remiss if we failed to point out the otherwise thorough and complete plea hearing which the trial court conducted. The trial court methodically informed McQuay of the rights which he was waiving. McQuay was also told that the trial court was not bound by the agreement. However, taken in context, this only referred to the length of sentence which could be imposed.

189–90. Because Grant was informed of the trial court's intentions and failed to object, the supreme court concluded that the issue was waived. *Id.* at 447–48, 243 N.W.2d at 190.[3]

Having concluded that the sentence is void, we must now decide the appropriate remedy. On appeal, McQuay renews his postconviction request for resentencing before a different judge and for a new presentence report without the "other offense" information. We have already concluded that this would be contrary to public policy. To protect the public interests, McQuay must be resentenced, but the sentencing court must have access to all relevant information.

Because the sentencing court's consideration of the dismissed counts will be contrary to the terms of the plea agreement, McQuay may desire to renew his motion for withdrawal of his pleas. Should he do so, the trial court should be guided by the presentence standard to determine if the motion should be granted.[4] The case is remanded to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgments and order affirmed in part, reversed in part and cause remanded with directions.

[3]When the federal district court granted a writ of habeas corpus to Grant, it concluded that the facts as presented to the Wisconsin Supreme Court were incorrect. *Grant v. Wisconsin,* 450 F. Supp. 575, 577 (E.D. Wis. 1978). However, we are persuaded that the principles laid out in *Grant v. State,* 73 Wis. 2d 441, 243 N.W.2d 186 (1976), under the facts as they were presented to the supreme court, still constitute good law.

[4]To withdraw a plea prior to sentencing, a defendant must present a fair and just reason for doing so, and the prosecution must not have been substantially prejudiced by reliance upon the plea. *See State v. Booth,* 142 Wis. 2d 232, 235, 418 N.W.2d 20, 21 (Ct. App. 1987).

BROWN, P.J. (*dissenting*). I wholeheartedly agree with the majority opinion in almost every respect. Sentencing courts should have all relevant information at their disposal. It is commendable that the majority has seen fit to denounce deliberate intrusions upon this particular responsibility.

I dissent, however, because I disagree with the remedy composed. The majority reverses the conviction and remands it for a new sentencing where the trial court will be able to resentence based on all relevant information. The majority acknowledges, though, that the defendant may very well move to withdraw his plea. I have no doubt that this acknowledgment is grounded upon the logic that since defendant relied on the plea agreement and since the plea agreement has been held to be "void" as a matter of public policy, therefore the plea was involuntary as a matter of law. Since the defendant has case law on his side, *see State v. Riekkoff*, 112 Wis. 2d 119, 332 N.W.2d 744 (1983), I would think that defendant's success in withdrawing his plea is a foregone conclusion.

The defendant is in all likelihood, therefore, going to get a trial. The question is, should he be allowed to receive this benefit?

I think not. During postconviction motions and in his brief-in-chief, the defendant never claimed that the plea agreement was void as against public policy. Rather, he claimed that the plea agreement was a good one and one capable of enforcement. His complaint was only that the trial court read a presentence report which included all the charges that the parties had agreed could not be considered by the court. He further complained that the prosecutor breached the agreement by praising the report to the court. He did not raise the

issue seized upon by the majority. Nor did the state use it in response.

Since McQuay never objected to sentencing on the grounds that the agreement itself was in error, McQuay waived his right of review on that issue. *See Grant v. State,* 73 Wis. 2d 441, 447, 243 N.W.2d 186, 190 (1976). As this court recently held, whether defendant, as here, seeks specific performance of a plea agreement, or whether, as in *Grant,* he seeks vacation of the plea agreement, the applicable burden is the same. *State v. Jorgensen,* 137 Wis. 2d 163, 168, 404 N.W.2d 66, 68 (Ct. App. 1987). Thus, contrary to the majority's assertion, McQuay's sentence is not void once this court *sua sponte* finds his plea agreement against public policy. The sentence may be voidable, but *Grant* demonstrates that the grounds for vacating the sentence must be raised below.

The majority decision is based on an issue of this court's own making. It is like a supervisory decision because it deals with a public policy violation by the prosecutor, the defendant, and the trial court; it does not concern a substantive complaint by the defendant.[1]

---

[1]The concurrence devotes much space to a discussion of supervisory opinions, concluding that I am wrong to assert a similarity between what the court does here and what other courts have done in their supervisory roles. I disagree. Plea bargains involve procedure and supervisory rules have been established to augment those procedures. *See State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). These procedures may not be used to prevent the trial court from acquiring full knowledge of the character and behavior pattern of a convicted defendant before imposing sentence. *Elias v. State,* 93 Wis. 2d 278, 285, 286 N.W.2d 559, 562 (1980). To do so would be illegal. The term "illegal" is defined to mean "[a]gainst or not authorized by law." *Black's Law Dictionary* 673 (5th ed. 1979). Thus, when the majority claims it is circumscribing

It is a decision borne out of the need to protect the integrity of the court, rather than to vindicate the constitutional rights of the defendant. *See United States v. Payner*, 447 U.S. 727, 747 (1980) (Marshall, J., dissenting). It puts the constable on trial (in this case, the district attorney and judge), rather than simply the defendant. *See id.* at 734. The right that has been invaded here is the right by the public to have a judge consider *all* the relevant information; the defendant's expectations are in no way legitimately involved.

Because it is in the nature of a supervisory opinion, the remedy may not be formulated in a vacuum. *United States v. Hasting*, 461 U.S. 499, 506 (1983). Rather, reversals must be exercised "with some caution." *See Payner*, 447 U.S. at 734. Interests must be balanced. *State v. Ruiz*, 118 Wis. 2d 177, 202, 347 N.W.2d 352, 364 (1984). One of the interests that must be balanced is the trauma that the victims of these crimes would experience by having to appear at trial. *Hasting*, 461 U.S. at 507. Another factor would be the specter of forcing them to relive the "harrowing experiences now long past." *Id.* A third factor is the practical problem of retrying these sensitive issues years after the events. While the majority believes that a balancing test should not be undertaken here, I believe it is necessary.

Undertaking the balancing test, I conclude the following. There were originally twenty-nine counts of first-degree sexual assault involving ten children. Most

conduct unbecoming public policy, it is, in reality, fashioning a remedy to correct an illegal plea bargain. Additionally, its decision works to preserve judicial integrity. Therefore, I conclude that the majority decision is analogous to a supervisory opinion. It *sua sponte* points fingers at the prosecutor, the defendant, and the judge and says that the whole plea and resultant sentencing bargain process was contrary to *Elias.*

of the counts occurred in 1986 and all were of heinous nature. If a trial is granted, the trial (or trials) will not take place until at least three years after the events have occurred. These children, who were between the ages of eight to thirteen years of age when the assaults occurred now doubtlessly wish to put the incidents behind them and avoid the embarrassment and trauma of trial.[2]

I understand the other side in the balancing test. The public has a right to expect that its elected judges will be apprised of all the sundry activities the defendant has been involved in as a consideration in sentencing.[3] If a trial were to take place and if defendant

---

[2]The concurrence quotes the parent of one of the children saying that the defendant should be put in prison for as long as possible. That parent also said that a good sentence would be about forty years, rather than the twenty years that the state was recommending. Two other persons also raised objections but the objections were to the prosecution's recommendation of twenty years. It is a long jump to infer, therefore, that these parents would be now so upset with the thirty-year term given that they would rather their children be witnesses at a trial three years later. The record shows that many of these children were severely traumatized; they were frightened of McQuay who said he would "get them." They were experiencing nightmares. Now he is in prison. This is not to say that children should never be put on the witness stand years later in cases of this nature; but it is to say rather that an appellate court should not interject itself into the case, affecting the daily lives of many, when no one involved with the case has registered the complaint dealt with *sua sponte* by the court.

[3]Even had the trial court been constrained to take into account the dismissed charges, the same sentence may well have been meted out. At the postconviction hearing, the trial judge stated:

> The only reason that this man got thirty is because there was a plea negotiation for him to get twenty. I tried. I tried as much as I could to restrain myself, and I did restrain myself, because this man did not put these children through the horrors of testimony and all the

were to be convicted of even five of the counts, he could be sentenced for one hundred years.

After taking both sides into consideration, I would affirm the conviction which has this defendant in prison for thirty years followed by twenty years of consecutive probation. I am satisfied that putting these children through the trauma of trial, and the uncertainty of conviction based upon the amount of time passed is a public concern that overrides the public's countervailing concern that a sentencing judge consider all the pertinent information. My conclusion is bolstered by the fact that the state, which represents the public, and which agreed at oral argument that the plea agreement violated public policy, nonetheless asked us to affirm the judgment in the interest of the victims. Accordingly, I dissent.

NETTESHEIM, J. *(concurring)*. I write separately to address the dissent's disagreement with the mandate of this case which directs either a resentencing or the opportunity for McQuay to withdraw his *Alford* pleas.

While plea bargaining is the subject of much controversy and debate, *see* Fine, *Plea Bargaining: An Unnecessary Evil*, 70 Marq. L. Rev. 615 (1987), this case does not address the wisdom of the practice—a matter beyond the power and authority of this court.

Although controversial, plea bargaining rests upon one fundamental and well-recognized principle—prose-

other things, and I think those are all useful things, and the reason that the district attorney made that plea negotiation, there's many very, very good reasons that these kinds of cases ought to be resolved by plea negotiation, and much to Mr. McQuay's credit he did do that, and he didn't put these children through all kinds of horrors. That's the only reason that I restrained myself and gave him the amount that I did.

cutorial discretion. The Wisconsin Supreme Court has directed that this discretion is to be accorded substantial deference. "The district attorney in Wisconsin is a constitutional officer and is endowed with a discretion that approaches the quasi-judicial." *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 378, 166 N.W.2d 255, 260 (1969). The prosecuting attorney has wide discretion in the manner in which his duties shall be performed and such discretion cannot be interfered with unless he proceeds in excess of jurisdiction. *Id.* at 379, 166 N.W.2d at 260.

No defendant can compel plea negotiations. No statutory or constitutional right to plea negotiations exists. It lies completely within the discretion of the prosecutor whether plea bargaining will occur. Thus, absent selective or discriminatory practices, a prosecutor could choose not to plea bargain at all.[1]

At the same time, our supreme court has cautioned that the exercise of prosecutorial discretion in the area of plea bargains is not unfettered, *State ex rel. White v. Gray,* 57 Wis. 2d 17, 29, 203 N.W.2d 638, 644 (1973), and the practice must be open to judicial scrutiny. *Id.* at 22, 203 N.W.2d at 640. From this scrutiny has evolved the principle that plea agreements which fail to furnish the public adequate protection, depreciate the seriousness of the offense or promote disrespect for the law are contrary to public policy. *State v. Jorgensen,* 137 Wis. 2d 163, 169, 404 N.W.2d 66, 68 (Ct. App. 1987).

While the wisdom of plea bargaining is not our domain, the wisdom of a *particular* plea agreement in a *particular* case is. Both the supreme court and the court

---

[1]An example is Alaska's abolishment of plea bargaining by directive of the attorney general who has supervisory authority over all the state's district attorneys. *See* Fine, *Plea Bargaining: An Unnecessary Evil,* 70 Marq. L. Rev. 615, 627-28 (1978).

of appeals have addressed the public policy ramifications of plea agreements in cases on appeal. *See, e.g., Grant v. State,* 73 Wis. 2d 441, 243 N.W.2d 186 (1976); *State ex rel. White v. Gray,* 57 Wis. 2d 17, 203 N.W.2d 638 (1973); *State v. Jorgensen,* 137 Wis. 2d 163, 404 N.W.2d 66 (Ct. App. 1987). No case limits the application of this rule to trial courts only. Thus, appellate as well as trial courts are properly bound by this principle.

The dissent does not argue that our scrutiny of the plea agreement in this case is improper. In fact, the dissent "wholeheartedly" agrees with the majority's conclusion that the plea agreement is contrary to public policy because it keeps relevant sentencing information from the court. The dissent, however, then faults the majority for choosing to do something about it.

The dissent's justification for "leaving well enough alone" is to liken the majority opinion to a "supervisory" opinion and then to engage in a balancing test in order to determine whether any further proceedings in the trial court are warranted.

Supervisory powers contemplate courts formulating "*procedural* rules not specifically required by the Constitution or the Congress." *United States v. Hasting,* 461 U.S. 499, 505 (1983) (emphasis added). Evaluating a plea bargain to assure that public policy is served is not the mere formulation of a procedural rule. To the contrary, it is an important substantive determination.

Supervisory rules are designed to: (1) implement a remedy for violation of recognized rights; (2) preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and (3) design remedies to deter illegal conduct. *Id.*

None of these concerns warranting the exercise of supervisory powers is present in this case. First, as the

majority prominently states, the compelling consideration in this case is the interest of the public in assuring that relevant sentencing information is not kept from the court. This consideration does not promote any recognized right of McQuay. To the contrary, it runs directly against his interests. The majority's ruling is not supervisory because it does not implement any remedy for any violation of McQuay's rights.

Second, the issue in this case has nothing to do with a conviction premised upon a jury verdict. In fact, a trial has never even occurred in this case. Therefore, the majority's ruling cannot be an exercise of supervisory powers prompted by improper considerations put before a jury.

Third, this case does not concern illegal governmental conduct. While this court (including the dissenter) concludes that the plea agreement in this case is contrary to public policy, nothing in the majority holding brands any conduct as illegal, requiring a sanction to deter such future governmental conduct.[2] The remedy fashioned assumes neither the form nor the spirit of a sanction to deter future illegal conduct. No evidence is suppressed. No charges are dismissed. No discipline of counsel for unethical conduct is suggested. *See State v. Ruiz,* 118 Wis. 2d 177, 203 n. 5, 347 N.W.2d 352, 364 (1984). The mandate of this case simply puts the matter back into a posture where a sentencing based upon proper factors, or withdrawal of a plea if necessary, can occur. Thus, the majority holding is not an exercise of our supervisory powers.

---

[2]Moreover, this case does not concern only governmental conduct. *Both* the state and McQuay are parties to the void agreement.

As such, the application of the balancing test utilized by courts in supervisory powers cases and as adopted by the dissent is inappropriate. This plea agreement is contrary to public policy. It keeps relevant and important information from the court—the very entity which is to make an informed sentencing decision. I fail to see how we can let such a sentence stand—regardless of its nature and length.

Even if the balancing test were to be applied, I question the dissent's conclusion that the sentencing should stand. First, I disagree that exchanging a known sentence for a sentencing exposure which could result in literally hundreds of years of imprisonment is truly a "benefit."

Second, the dissent concludes that McQuay's present sentence is adequate to outweigh the public policy violation in this case. The uncertainty of this reasoning is troubling. It has no perimeters or guidelines. What if the sentence were fifteen years? Five years? Probation? The opportunity for unevenness in this approach is self-evident. Some sentences under illegal plea agreements would be voided—some would be upheld.

Finally, I question the dissent's assumption that the wishes and best interests of *all* the victims are well served by salvaging this plea agreement and the resultant sentence. While certain of the victims' parents presumably approved of the agreement, the record reveals that one parent wanted a prison sentence which would keep McQuay "out of the community as long as possible." Another parent wanted McQuay to receive a sentence in excess of the bargained sentence. Still another parent stated that he was "not satisfied with the plea bargain." Certainly these parents did not view the state's recommended sentence as a fair exchange for

their children being spared the witness stand. The dissent says this is an unwarranted inference. It is not. These incidents of parental disagreement with this plea agreement are documented in the record.

The testimonial experience in a criminal case for any victim or witness, particularly children, is certainly traumatic. But whether this price is properly paid in order to avoid the victims' perception of a bad plea agreement or to obtain the victims' perceptions of justice is a decision better left to the victims or those who speak for them. In effect the dissent says to the parents who dislike this plea bargain that the courts, better than they, know what is best for their children. While the wisdom of these parental decisions might be questioned, I would hesitate to substitute this court's judgment for that of a parent on such a crucial, personal and sensitive matter.

If all the parents endorsed this plea agreement, the dissent's point might be well taken. However, in light of some parental disenchantment with this agreement, I think the dissent unwisely presumes to speak for this faction when it engages in its balancing test.