STATE of Wisconsin, Plaintiff-Respondent,

v.

Lance D. WINDOM, Defendant-Appellant.†

Court of Appeals

*No. 91–1938–CR. Submitted on briefs February 4, 1992.—Decided May 5, 1992.*

(Also reported in 485 N.W.2d 832.)

†Petition to review denied.

342

For the defendant-appellant the cause was submitted on the briefs of *Mary E. Waitrovich,* first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *David J. Becker,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Lance D. Windom appeals from a judgment of conviction and from an order denying both his postconviction motion to vacate the sentence ordered after his parole revocation and his motion for resentencing before a different judge. Windom complains that his right to effective assistance of counsel, guaranteed by U.S. Constitution Amendment VI and by Wisconsin Constitution Article I, Section 7, was violated when his attorney failed to object to the State's breach of a plea agreement when it made a sentence recommendation at the resentencing hearing. We conclude that the State did not breach the plea agreement, and therefore, Windom's counsel was not ineffective. Accordingly, we affirm.

## I.

The undisputed facts of record reveal that Windom was arrested for burglary of a jewelry store on October 31, 1989. On his plea of guilty, Windom was convicted on March 12, 1990, of burglary, party to a crime, in violation of secs. 943.10(1)(a) and 939.05, Stats., respectively. A plea agreement between the State and Windom provided that Windom would plead guilty to the burglary charge and the State in turn would not make a sentence recommendation to the sentencing court. The court withheld prison sentence, placed Windom on probation for three years, and ordered him to serve thirty days in the House of Correction as a condition of probation. The State honored its agreement by remaining silent.

344

On April 19, 1990, Windom was charged with armed robbery and was subsequently sentenced to five years of incarceration.[1] Windom's probation was revoked.[2] On October 31, 1990, Windom reappeared before the circuit court for resentencing on the burglary charge. The State recommended that any sentence ordered by the court on the burglary conviction should be consecutive to the sentence imposed for the armed robbery offense because a concurrent sentence would unduly reward Windom for engaging in illegal conduct during his probation. The circuit court sentenced Windom to eighteen months imprisonment for the burglary conviction consecutive to the five-year sentence for the armed robbery. Windom's counsel made no objection to the State's consecutive-sentence recommendation.

The facts further show that the prosecuting attorney, by letter dated November 14, 1989, to Windom's attorney, stated:

> If your client wishes to resolve this case short of trial, please be informed that upon a plea of guilty the State will be making no specific recommendation but leaving [sic] sentencing up to the court. Please let me know as soon as possible whether or not this will be a trial or a plea so that I may recall my witnesses.

Both Windom and the State, in the circuit court and on appeal, agree that this letter is the only documented evidence of the plea agreement.

---

[1] Prior to serving his thirty-day incarceration as a condition of probation, Windom was arrested for armed robbery.

[2] Windom's probation officer recommended revocation because he failed to keep a required probation appointment, he tested positive for marijuana use, and he was involved in the new charge of armed robbery.

## II.

This appeal raises the question of whether the burglary charge plea agreement was ambiguous and whether the State violated it when it recommended, on resentencing for the burglary, that its term run consecutive to the sentence for the subsequent armed robbery conviction.

Windom contends that his counsel's failure to object violated his constitutional rights and entitles him to a new sentencing hearing before a different judge. He also seeks specific performance of the plea agreement through a resentencing on the burglary conviction. Windom asserts that the assistant district attorney's letter outlining the terms of the plea agreement was ambiguous. Windom argues that "sentencing" in the State's promise not to make a "specific recommendation but leaving sentencing up to the court" is ambiguous. Windom asserts that a plea agreement is a contract that is constitutionally based and that it is the State's burden to insure that the terms of the agreement are unambiguous, citing *United States v. Harvey,* 791 F.2d 294, 300–01 (4th Cir. 1986). Windom concludes that an ambiguity should be construed against the government and in favor of a defendant. *See id.* at 301.

Relying upon *United States v. Ewing,* 480 F.2d 1141 (5th Cir. 1973), Windom asserts that the initial probation sentence on the burglary conviction and the sentence after probation revocation "were integral parts of the sentencing process." *Id.* at 1143. Ewing, as did Windom, entered a plea of guilty "in the expectation that the benefits of [the State's] promise would be available throughout the proceedings relevant to the determination of his sentence. The Government was obligated to fulfill its commitment at least until the question of

Ewing's sentence was finally resolved by the sentencing judge." *Id.*[3] Windom also cites *State v. Wills,* 765 P.2d 1114 (Kan. 1988), for the proposition that absent a provision in the plea agreement enabling the State to argue a different sentencing recommendation in a hearing for sentence modification, "the defendant would reasonably expect the State to be bound by its promise at all hearings which affect the determination of his sentence." *Id.* at 1119-20.

The State argues that a defendant bears the "burden . . . to show, by clear and convincing evidence, not only that a breach had occurred, but also that it was material and substantial," citing *State v. Jorgensen,* 137 Wis. 2d 163, 168, 404 N.W.2d 66, 68 (Ct. App. 1987). The State asserts that Windom did not sustain this burden of proof. Citing several federal circuit court opinions,[4] the State also asserts that since a court must ascertain what the parties "reasonably understood" the plea agreement provisions to mean, Windom did not sustain his burden of proving that his interpretation of the plea agreement was reasonable. The State postulates: "[w]hat right-thinking prosecutor would commit himself or herself to a particular course of action that might turn out to be

---

[3]The prosecution in *Ewing* agreed not to oppose probation in exchange for his plea of guilty to two counts of aiding and abetting the interstate transport of stolen motor vehicles. On Ewing's subsequent motion for a sentence reduction pursuant to Rule 35 of the Federal Rules of Criminal Procedure, the State opposed his request for probation. *Ewing,* 480 F.2d at 1142-43.

[4]*United States v. Jimenez,* 928 F.2d 356, 363 (10th Cir. 1991), *cert. denied,* 112 S. Ct. 164 (1991); *United States v. Casamento,* 887 F.2d 1141, 1181 (2nd Cir. 1989), *cert. denied,* 493 U.S. 1081 (1990); *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir. 1986), *cert. denied,* 479 U.S. 835 (1986); and *United States v. Crusco,* 536 F.2d 21, 27 (3rd Cir. 1976).

wholly inappropriate in light of subsequent developments . . .?"

## III.

Existing state and federal law provides that:

> Plea bargaining has been recognized as an "essential component of the administration of justice." *Santobello v. New York,* 404 U.S. 257, 260 (1971); *State ex rel. White v. Gray,* 57 Wis. 2d 17, 21, 203 N.W.2d 638, 640 (1973). As an important phase in the process of criminal justice, plea bargaining must be attended by procedural safeguards to ensure that a defendant is not treated unfairly. *Santobello,* 404 U.S. at 262. Thus, when a defendant pleads guilty to a crime pursuant to a plea agreement and the prosecutor fails to perform his part of the bargain, the defendant is entitled to relief. *Santobello,* 404 U.S. at 262.

*State v. Beckes,* 100 Wis. 2d 1, 3–4, 300 N.W.2d 871, 872–73 (Ct. App. 1980) (footnote omitted), *review denied,* 100 Wis. 2d 750, 308 N.W.2d 417 (1980).

A plea agreement is analogous to a contract and we therefore draw upon contract law principles for its interpretation.[5] *Jorgensen,* 137 Wis. 2d at 167, 404 N.W.2d at 68. The law in Wisconsin is that unambiguous contractual language must be enforced as it is written. *Dykstra v. Arthur G. McKee & Co.,* 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–703 (Ct. App. 1979) (citation omitted), *aff'd,* 100 Wis. 2d 120, 301 N.W.2d 201 (1981). Contrac-

---

[5]*But see United States v. Bowler,* 585 F.2d 851, 854 (7th Cir. 1978) (The Government should not resort to a rigidly literal approach in the construction of plea agreement language.).

348

tual language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt v. Wilk,* 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). Construction of a contract, including the determination of whether its terms are ambiguous, is a legal matter that we decide *de novo. Ibid.* We may not use the mechanism of construction to revise an unambiguous contract in order to relieve a party to a contract "from any disadvantageous terms" to which he or she has agreed. *Dykstra,* 92 Wis. 2d at 38, 284 N.W.2d at 703.

We determine that the plea agreement for the burglary charge was not ambiguous. The meaning of "sentencing," as used in the State's letter to Windom's counsel, is limited to that event which Windom was sentenced to probation and thirty days of incarceration as a condition of probation. If Windom understood the plea agreement to include all sentencings stemming from the burglary charge, then he should have evidenced such an understanding on the record or in a letter to the prosecuting attorney. We will not revise the existing agreement to comport with Windom's interpretation.

Independent of his assertion that the plea agreement was ambiguous, Windom argues that the State breached the agreement. "Whether a breach of contract exists involves a question of fact. Findings of fact will not be overturned unless clearly erroneous." *Jorgensen,* 137 Wis. 2d at 169, 404 N.W.2d at 68 (citations omitted). The party asserting a breach of a plea agreement must "show, by clear and convincing evidence, not only that a breach occurred, but also that it was material and substantial." *Id.* at 168, 404 N.W.2d at 68.

We determine that the scope of the plea agreement was limited to the original sentence for probation and therefore the State did not breach the plea agreement. There is no evidence to indicate the parties intended the plea agreement to extend beyond the original sentence for burglary. To treat the sentencing after probation revocation as an integral part of the original sentence would bind the State to that plea agreement ad infinitum in all subsequent sentence hearings arising out of the original crime. To bind the State to the plea agreement in this manner would undermine the plea agreement process such that the State would be less inclined to offer charge reductions in exchange for pleas of guilty.[6]

Independent of our determination of the scope of the plea agreement, we hold that new factors arose in this case to warrant the prosecutor's change in position. The State fulfilled its agreement to remain silent at the sentence hearing in which Windom received probation for the burglary conviction. Windom fails to identify clear and convincing evidence showing that the State breached the plea agreement. *Jorgensen,* 137 Wis. 2d at 168, 404 N.W.2d at 68. The prosecutor's promise to remain silent induced Windom to plead guilty, and Windom reaped the benefits of the State's promise.[7]

---

[6] "Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons." *Santobello v. New York,* 404 U.S. 257, 261 (1971).

[7] A promise by the State must be fulfilled "when a plea rests in any significant degree on a promise or agreement . . . so that it can be said to be part of the inducement or consideration." *Santobello,* 404 U.S. at 262. *Santobello* concerned a promise by a prosecutor that the state would remain silent as to a sentence recommendation to the court at the guilty plea hearing. Subse-

Windom's prison sentence for this same conviction occurred only after he committed a subsequent crime. The newly-committed crime was in part the cause of his probation revocation. The fact that Windom violated the terms of his probation was a "new and additional factor" that the State was entitled to consider in the subsequent and separate sentence hearing. *Witzel v. State,* 45 Wis. 2d 295, 300, 172 N.W.2d 692, 695 (1969). "Something new had been added" to the prosecution of this case, and under his own volition, "the defendant added it." *Id.*[8] See also *State v. Pascall,* 358 N.E.2d 1368, 1369 (Ohio Ct. App. 1972) ("[T]here is an implied promise by the defendant that the circumstances under which the bargain was made will remain substantially the same. A subsequent change, such as a conviction here of armed robbery, is sufficient to justify and excuse the prosecutor from fulfilling his promise to recommend probation."); *State v. Giebler,* 591 P.2d 465, 467 (Wash. Ct. App. 1979) (an assault committed by the convict while waiting for sentencing on his guilty plea was a sufficient change in circumstances to justify the State's withdrawal of its promised sentence recommendation), *review denied,* 92 Wash. 2d 1013 (1979).

In summary, the State fulfilled its duty under the plea agreement by remaining silent at the original sentencing hearing. The scope of the plea agreement was

---

quently, a different prosecutor recommended to the sentencing court that a maximum sentence be imposed. *Id.* at 258–59.

[8]The State in *Witzel* originally agreed to remain silent on a sentence recommendation at the defendant's sentence hearing. However, since the defendant was out of state and in custody on the day of sentencing, "the district attorney was entitled to take this new and additional factor into consideration in making his recommendation as to the sentence that should be imposed." *Witzel,* 45 Wis. 2d at 300, 172 N.W.2d at 695.

limited to the original hearing for which Windom was sentenced to probation. In any event, the State had a basis in fact to change its position because of the new factor added by the defendant.

*By the Court.*—Judgment and order affirmed.

FINÉ, J. *(concurring).* Lance D. Windom's contentions on this appeal reflect the Alice-In-Wonderland nature of the plea-bargaining process that pollutes our criminal justice system.[1] As the majority points out, Windom received probation for his burglary. As a condition of his probation, Windom was ordered to serve thirty days in the Milwaukee House of Correction on work-release. That was on March 12, 1990. On April 19, 1990, he committed an armed robbery. As a result, Windom's probation was revoked. At the sentencing-after-revocation hearing for the burglary, the State recommended that the trial court impose a sentence consecutive to the five-year sentence imposed on the armed-

---

[1] As I have explained extensively elsewhere, "plea bargaining" is the expediency-based practice where a prosecutor offers an inducement not warranted by the facts in order to persuade a defendant either to plead guilty or otherwise accept conviction. R.A. FINE, ESCAPE OF THE GUILTY (1986); Fine, *Plea Bargaining: An Unnecessary Evil,* 70 MARQ. L. REV. 616 (1987). *See also* Alschuler, *Plea Bargaining and its History,* 79 Col. L. Rev. 1 (1979). Although the practice "can tend to subvert the ends of justice rather than to advance them," *Pontow v. State,* 58 Wis. 2d 135, 142, 205 N.W.2d 775, 779 (1973), it nevertheless flourishes in most—but not all—jurisdictions because it *appears* to be necessary "to speed litigation" in our criminal courts, *Armstrong v. State,* 55 Wis. 2d 282, 287, 198 N.W.2d 357, 359 (1972). In reality, however, by weakening deterrence, the practice encourages criminality and, accordingly, contributes to the influx of criminals that clog our courts.

robbery conviction. The trial court followed the State's recommendation.

Windom complains that the State's recommendation at the sentencing-after-revocation hearing violated the State's original plea-bargaining commitment to make "no specific recommendation but leaving sentencing up to the court."[2] His complaint borders on chutzpah.[3] As the Court of Appeals of California elo-

---

[2]Despite the inference to the contrary in the bargain between Windom and the State, and the unfortunate practice by some judges, *see, e.g., State v. Brown,* 150 Wis. 2d 636, 638–639, 443 N.W.2d 19, 20 (Ct. App. 1989) (colloquy by trial judge rubber-stamping plea-bargained sentence recommendation*), sentencing is exclusively the trial court's responsibility subject to appropriate appellate review. Trial judges may not involve themselves in the plea-bargaining process, *Rahhal v. State,* 52 Wis. 2d 144, 150, 187 N.W.2d 800, 804 (1971), and are not bound by any plea-bargained deals that may be presented to them, *State v. McQuay,* 154 Wis. 2d 116, 128, 452 N.W.2d 377, 382 (1990).

*The trial-court colloquy in *Brown* was as follows:

THE COURT: ... It's my understanding the sentence is four years in the Wisconsin State Prison System with credit for 14 days served. Did I write that down correctly?

MS. SAYLES [the prosecutor]: Yes.

THE COURT: Mr. Lubarsky [defense counsel], that's your understanding?

MR. LUBARSKY: Yes.

THE COURT: Mr. Brown, is that your understanding?

MR. BROWN.: Yes, sir.

THE COURT: Is there anything you would like to say today?

MR. BROWN: No, sir.

THE COURT: Okay. The sentence will be then as stated on the record . . .. We are adjourned. Thank you.

*Brown,* 150 Wis. 2d at 638–639, 443 N.W.2d at 20.

[3]The Yiddish word chutzpah is colorfully defined by the classic example of the gall displayed by the young man who, after he is convicted of murdering his parents, seeks leniency because he is

quently put it:

> A consummated plea bargain does not insulate a defendant from the consequences of his future misconduct. A defendant gets the benefit of his bargain only once. Like time, a plea bargain once spent is gone forever.

*People v. Jones,* 180 Cal. Rptr. 228, 233 (Ct. App. 1982). For the foregoing reasons, I join in the majority's decision.

---

an orphan. *See* L. ROSTEN, THE JOYS OF YIDDISH 93 (Pocket Book 1970).