STATE of Wisconsin, Plaintiff-Respondent,†

v.

John D. WILLIAMS, Defendant-Appellant.

Court of Appeals

*No. 00–0535–CR. Submitted on briefs October 2, 2000.—Decided December 27, 2000.*

2001 WI App 7

(Also reported in 624 N.W.2d 164.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John A. Pray* of the *Frank J. Remington Center, University of Wisconsin Law School,* Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James H. McDermott*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. BROWN, P.J. The issue in this case is whether the prosecutor violated her agreement to recommend probation and jail time for John D. Williams. We hold that she violated the agreement when she told the court she now had a negative impression of Williams based on information acquired subsequent to the plea agreement, adopted the same negative impressions expressed by the presentence investigation (PSI) writer and then gratuitously informed the court that the PSI writer recommended prison. The plea agreement was breached, the sentence is vacated and we remand for a new sentencing hearing.

¶ 2. Williams pled guilty to one count of failure to pay child support. As part of the plea agreement, the State agreed to recommend that Williams receive three years of probation, with the condition that he pay current support plus all arrearages, and serve sixty days in jail. But at the sentencing hearing, the prosecutor made the following comments, which we believe are important enough to repeat in full:

> Judge, I believe that when Mr. Williams entered his plea that we had told the Court that we would be recommending a presentence investigation. And that we would be recommending that sentence be withheld for a period of three years—I am sorry, that he be placed on probation for a period of three years, that he pay arrearages and pay current child support. And then as a condition of the

probation he be incarcerated in the county jail for a period of 60 days.

*After reading through the presentence, it appears that I think I can best describe my impression of this defendant as manipulative and unwilling to take any responsibility.* I have had an occasion to speak with Ms. Valerius [Williams's former wife]. And she has indicated things that she will be presenting to the Court. *But it was quite a contrast speaking with her and reading and learning about Mr. Williams.*

Judge, when she speaks to you you are going to learn about a mother who has done everything she can for her daughter, has taken on the obligation, the responsibilities of raising a child, and had to do it on her own because [Williams] has done everything to completely do the opposite. He has taken on no real meaning in terms of creating a relationship. And you will learn of some of that later on. *It's quite frankly disheartening and saddening to know that someone could have a daughter now who is 18 . . . .*

. . . .

[A]nd with all the opportunities to have a relationship, denied that. And it hasn't been because the mother has denied it[;] it is the defendant himself. He always had free access and chose . . . not to have a relationship. When we create life we have to take on the responsibility. You will also learn there was a time where through the Child Support Agency there were many efforts to get Mr. Williams to pay child support. We are talking about a nominal amount of money he was ordered to pay, $50 a week. I don't think any of us think that that's extravagant. That's just minimal. And he was working at a job earning $14 an hour, had health insurance, but yet never included his daughter on it. And you are going to learn of some health problems that the daughter has that the health

5

insurance certainly would have been of great assistance.

When speaking with [Ms. Valerius], she informed me that at one point when she remarried to a very caring person who took on Mr. Williams' daughter as his own, and when they wanted to adopt her, Mr. Williams refused to give up his rights, *but yet he wouldn't call, he didn't write, he didn't see, he wouldn't even pay the support for the daughter. It just is very frustrating to think that someone could completely walk away and be so uncaring about a child.*

The presentence writer, we had a conversation on June 8th with her. She had indicated she would be in court, but I don't see that she has arrived. She had made a few comments that I will relay to the Court. Mr. Sisley had informed her that the defendant had claimed he had no means to contact an attorney before sentencing. She had indicated that she was aware that the defendant has a cell phone, and the defendant had been driving all around and has access to a vehicle. He has been arrested for operating while suspended in the past. And her last point was that if the defendant had told her, his agent, he could have used her phone to contact an attorney. *She reiterated to Mr. Sisley that it was her belief that the defendant needs to go to prison.* (Emphasis added.)

¶ 3. At this point, Williams objected on the grounds that these comments violated the plea agreement. The court agreed and then the prosecutor denied that the comments violated the agreement. Again, we will relate her comments:

I am in no means suggesting that I am asking the Court to adopt the agent's recommendation. I believe that the sentencing court should have all

6

information necessary. And I am just merely relaying it. She had indicated she would be here, and that was the information she had given us. So again, I will reiterate, Judge, we are standing by our recommendation, and I have not changed that, and that's why I started off by saying we were recommending the three years probation.

¶ 4.    The court did not thereafter issue a ruling on the objection but proceeded with the rest of the hearing. Williams's former wife then testified at some length about the lack of a relationship that Williams had with his daughter. At the conclusion of the hearing, the sentencing court indicated that it had read the PSI and stated that it is not often that it sentences contrary to a joint recommendation, but was going to do it here. The court sentenced Williams to eighteen months in prison.

¶ 5.    Whether the prosecutor violated the terms of a plea agreement is a question of law that we review de novo. *See State v. Ferguson*, 166 Wis. 2d 317, 320–21, 479 N.W.2d 241 (Ct. App. 1991). A defendant has a constitutional right to have a negotiated plea agreement, which he or she relied on, enforced. *See State v. Knox*, 213 Wis. 2d 318, 321, 570 N.W.2d 599 (Ct. App. 1997).

¶ 6.    In *State v. Poole*, 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986), this court discussed the problem with a prosecutor making negative comments at sentencing based on information acquired after the plea agreement. In that case, the prosecutor had agreed to recommend a fine for a burglary. *See id.* at 360. At sentencing, the prosecutor stood by that recommendation, but also pointed out that she was now aware of new information—that the defendant's proba-

tion was revoked in a separate case—but the agreement was entered into "before we knew of the other instances." *See id.* The *Poole* court cited several cases from other jurisdictions as part of its analysis and then wrote:

> A comment which implies reservations about the recommendation 'taint[s] the sentencing process' and breaches the agreement.
>
> . . . .
>
> We conclude that a prosecutor may not render less than a neutral recitation of the terms of the plea agreement. The recommendation in the case at hand fell below that standard. The prosecutor's comments implied that circumstances had changed since the plea bargain, and that had the state known of the other instances of defendant's misconduct, they would not have made the agreement they did.

*Id.* at 364. *Poole* indicates that while the prosecutor may inform the court about negative information acquired about the defendant after the plea agreement, if relevant to sentencing, the prosecutor may not imply that he or she has subsequently changed his or her mind about the plea.

¶ 7. We recognize that there is a fine line between presenting information to the court for its education and presenting information in a way that implies that the prosecutor has second thoughts about the agreement. Many courts have discussed the difficulty in discerning when the line is crossed such that the recommendation is no longer neutral. Some of these cases were discussed in *Poole*. These jurisdictions have construed comparable plea agreements liberally

8

to favor the defendants.[1] As stated by the Minnesota Supreme Court in *State v. Witte*, 245 N.W.2d 438, 439 (1976):

> Although the issue is not free from doubt, since it can be argued that the prosecutor presented information, not his personal recommendation, we think that in close cases plea agreements should be construed in favor of defendants. This practice best serves the important interest in fair, honest, and open plea bargaining as an integral part of the criminal justice system.

We agree with these jurisdictions and adopt the view that in close cases, the agreements should be construed in favor of the defendants.

¶ 8. A close reading of the above passage from *Witte* delineates a difference between presenting information that the prosecutor is not only free to do, but has a duty to do and making this information his or her "personal recommendation." We see this language as instructive. When a prosecutor has gathered negative information about the defendant, we should look at *how the prosecutor used* this information. In other words, we should look closely at whether the prosecutor used this information to imply a personal recommendation.

---

[1] *See United States v. Brown*, 500 F.2d 375, 377 (4th Cir. 1974); *Miller v. State*, 322 A.2d 527, 529 (Md. 1974); *People v. Barajas*, 26 Cal. App. 3d 932, 936–37 (Cal. Ct. App. 1972); *People v. Eck*, 197 N.W.2d 289, 289–90 (Mich. App. 1972); *Wood v. Commonwealth*, 469 S.W.2d 765, 766 (Ky. Ct. App. 1971); *Clancy v. Coiner*, 179 S.E.2d 726, 731 (W. Va. 1971); *Commonwealth v. Alvarado*, 276 A.2d 526, 528–29 (Pa. 1971).

¶ 9. In this case, the line was crossed. The prosecutor had no need to discuss the PSI or Valerius's testimony. The court already had the PSI in its possession; Valerius was present in court and was planning on testifying about her views. In short, the prosecutor did not need to provide any information. The court either already had the information or was about to get it.

¶ 10. Furthermore, the prosecutor did not discuss what she learned from the PSI or Valerius as a neutral commentator. She began her remarks by stating: "After reading through the presentence, it appears that *I think I can best describe my impression* of this defendant as manipulative and unwilling to take any responsibility." (Emphasis added). By this beginning, the prosecutor was informing the court that the after-acquired information affected *her* impressions of Williams. So, what followed after this opening remark was not a neutral account of after-acquired information provided for the benefit of the court. It was instead an explanation by the prosecutor as to why *she* now had a different take on Williams's character. Likewise, when discussing Valerius's testimony, the prosecutor was equally opinionated:

> It's quite frankly *disheartening and saddening* to know that someone could have a daughter now who is 18 . . . .
>
>    . . . .
> [A]nd with all the opportunities to have a relationship, denied that. And it hasn't been because the mother has denied it[;] it is the defendant himself. He always had free access and chose . . . not to have a relationship. When we create life we have to take on the responsibility. . . .
>
>    . . . .

10

. . . It just is *very frustrating to think that someone could completely walk away and be so uncaring about a child.* (Emphasis added.)

¶ 11. We are convinced that the prosecutor's remarks showed that she now had second thoughts about the plea agreement based on what she now knew about Williams's character. Thus, her statement a short while later, that the PSI writer has recommended prison, takes on added significance. This is especially so since the PSI writer had formed the same impressions for the same reasons and had recommended prison. The prosecutor made the impressions relied upon by the PSI writer her *own*, and she crossed the line when she went on to say how the PSI writer recommended prison. We cannot separate the prosecutor's newly held personal impressions of Williams from her gratuitous remark that the PSI writer recommended prison—gratuitous because the court already had the PSI in its possession and presumably knew the writer's recommendation. We are satisfied from the totality of the sentencing hearing remarks made by the prosecutor that the prosecutor was making the PSI recommendation her own.

¶ 12. We reiterate that a prosecutor is not required to advocate for a bargained sentence enthusiastically, *see Poole*, 131 Wis. 2d at 364, and may inform the court about the character of the defendant, even if it is negative. *See Ferguson*, 166 Wis. 2d at 324.[2] But what the prosecutor may not do is personalize the information, adopt the same negative impressions as

---

[2] The prosecutor's negative remarks support a prison sentence, not probation. Had the recommendation been for a prison sentence, the remarks would have supported the recommendation.

11

the PSI writer and then remind the court that the PSI writer has recommended a harsher sentence than recommended. That is what happened here.

¶ 13. We discuss one other issue before closing. The State argues that Williams did not properly object to the prosecutor's statements. Trial counsel must object to errors with such specificity that the trial court and opposing counsel have an opportunity to remedy the defect. *See Champlain v. State*, 53 Wis. 2d 751, 758, 193 N.W.2d 868 (1972). We conclude that Williams's attorney objected with sufficient clarity to alert the trial court. In response to the prosecutor's extended remarks, Williams's attorney stated:

> [T]he state seems to be undercutting its recommendation to the Court by relaying things that are not the state's position, they are an agent's position. . . . [I]t seems to me that the state is in essence . . . undermining the recommendation that was put out and which Mr. Williams entered a plea. . . . [B]ut I think if it gets to the point where the state is basically saying we want to change our recommendation, or we think the Court should without saying so, I think that's certainly something that is a problem.

It is clear that Williams's attorney was objecting because he thought that the prosecutor had breached the plea agreement by adopting the agent's position and was implying a change in her recommendation. This is made all the more evident by the fact that the trial court recognized it as an objection and initially agreed with Williams's attorney. The objection was sufficient. That Williams's counsel did not repeat his objection when the prosecutor replied that she was in fact abiding by the agreement is of no moment. The

12

objection was out there, the court understood it to be so and that is all that is necessary. Objections need not be made with technical precision. They need to relay the proper information to the court. This objection passed muster.

¶ 14. We make one other comment. The State claims that the prosecutor's reply that she was not changing her recommendation salvaged the breach. We disagree. Just because the prosecutor says there was no breach does not make it so.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 15. SNYDER, J. *(concurring)*. The dissent begins by acknowledging that a prosecutor has a duty to honor a plea agreement. It then notes that when a prosecutor has a duty to convey relevant information to the sentencing court, such a duty must be balanced against the duty to honor a plea agreement. The dissent concedes that this is a "close case" and that the prosecutor must walk a "fine line" in balancing the two duties, *see State v. Hanson*, 232 Wis. 2d 291, 302, 606 N.W.2d 278 (Ct. App. 1999), *review denied*, 234 Wis. 2d 177, 612 N.W.2d 733 (Wis. Apr. 26, 2000) (No. 99–0120–CR), and then worries that the majority opinion will frustrate a prosecutor's duty to convey relevant information to the sentencing court about the crime, the victim or other factors bearing on the sentence simply because the information is unfavorable to the defendant. The dissent's worry is misplaced.

¶ 16. This case is not about unfavorable information being withheld from the sentencing court. This case is about the sentencing court sustaining John D. Williams's objection to the prosecutor's breach of duty

to honor the plea agreement, and the later excusal of that breach because the postconviction court determined that the prosecutor did not intend to breach the agreement. The record is silent as to the need for or any concern about a "relevant sentencing information balancing" test.

¶ 17.  Much is made here of whether *Hanson, State v. Ferguson*, 166 Wis. 2d 317, 479 N.W.2d 241 (Ct. App. 1991), or *State v. Poole*, 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986), are informative or provide guidance in this case. I conclude that none of those cases are so factually or procedurally similar to this case that they can provide assistance in resolving the appellate issue raised by the record events herein established. In general, it is fair to say that Wisconsin law concerning what constitutes a plea agreement breach entitling a defendant to relief is in disarray.

¶ 18.  The relevant record events are undisputed. On March 16, 1999, the plea agreement calling for a probation/jail time recommendation was placed upon the record by the State, and Williams entered a plea of guilty. The trial court then ordered a presentence investigation report (PSI) on its own motion.[1] Corrections Agent Sue Zernzack prepared and filed her PSI on May 27, 1999, opining that county jail confinement would not have a satisfactory impact on Williams and that only a prison setting would provide the necessary structure, and recommending a medium term of incarceration. The prosecutor, Sandy A. Williams, apparently troubled by the PSI contents and its prison

---

[1] The prosecutor told the sentencing court that she believed that the State recommended a PSI at the plea hearing. However, when the plea court raised the question of ordering a PSI, the prosecutor replied, "It's up to the Court. We hadn't discussed it, Judge." A PSI was not a part of the plea agreement.

recommendation, told the sentencing court that her office had then met with a victim witness, Roberta Valerius, who attended the sentencing hearing and addressed the court. The prosecutor stated that her office met with Zernzack on June 8, 1999, and that Zernzack provided opinions and comments extraneous to, but in support of, the PSI and "reiterated . . . that it was [Zernzack's] belief that [Williams] needs to go to prison." The sentencing hearing occurred on June 30, 1999.

¶ 19. During the sentencing proceeding, the prosecutor solicited an affirmation from Valerius that Valerius was a good mother and that Williams was a bad father.[2] In addition, the prosecutor related information allegedly obtained from the PSI author[3] that emphasized and further supported the PSI prison recommendation. Williams's defense counsel objected to the prosecutor's comments as breaching the plea agreement and the following exchange occurred:

[DEFENSE ATTORNEY]: Judge, I am just going to object here. The state seems to be undercutting

---

[2] The solicitation is apparent from the following record:

[THE PROSECUTOR]: Judge, when [Ms. Valerius] speaks to you you are going to learn about a mother who has done everything she can for her daughter, has taken on the obligation, the responsibilities of raising a child, and has had to do it on her own because the father of that child has done everything to completely do the opposite. He has taken on no real meaning in terms of creating a relationship. And you will learn of some of that later on. It's quite frankly disheartening and saddening to know that someone could have a daughter now who is 18, correct?

MS. VALERIUS: M-hm.

[3] The prosecutor told the sentencing court that Zernzach indicated on June 8 that she would attend the sentencing, but her appearance is not noted in the record.

its recommendation to the Court by relaying things that are not the state's position, they are an agent's position. [Agent Zernzach's] comments are in the P.S.I. And I have at a certain point . . . to object. But it seems to me that the state is in essence . . . undermining the recommendation that was put out and which Mr. Williams entered a plea. So I guess I am just calling — raising an objection here and seeing where we are going with this. Because it seems to me that obviously the state can make its argument, but I think if it gets to the point where the state is basically saying we want to change our recommendation, or we think the Court should without saying so, I think that's certainly something that is a problem.

THE COURT: I agree.

¶ 20. At that point the prosecutor related that "if I indicated anything other than what our recommendation is" that the court could look at the PSI itself, that she was just relaying information that Zernzach had provided the prosecution after the PSI was filed, and that she was merely relating "information that has come to light since the presentence was filed." The trial court, apparently unimpressed with the State's suggestion that it was only exercising its duty to provide relevant sentencing information, did not address the prosecutor's response and did not perform a relevant sentencing information balancing exercise or otherwise respond to the prosecutor's remarks. The defense's breach objection remained sustained in the sentencing hearing record.

¶ 21. The court did, however, revisit its plea agreement breach ruling at the postconviction hearing, where it concluded that "taken in that context when [the prosecutor] goes on to explain it, it's clear that [the

16

prosecutor] wasn't advocating a change in the recommendation. *That was not her intent.*" (Emphasis added.) The postconviction court did not address, or apparently see any compelling need to address, the relevant sentencing information balancing test. The postconviction court denied sentence relief to Williams on the basis that the plea agreement breach was not a breach because the prosecution did not intend to breach. That holding lacks support in the law and is erroneous.

¶ 22.  Williams has a constitutional right to the enforcement of a negotiated plea agreement, *see State v. Smith*, 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997), and "[t]he state may not accomplish 'through indirect means what it promised not to do directly,' i.e., convey a message to the trial court that a defendant's actions warrant a more severe sentence than that recommended." *Ferguson*, 166 Wis. 2d at 322. The *Poole, Hanson* and *Ferguson* decisions do not address judicial excusal of a previously acknowledged prosecution plea agreement breach, unintended or otherwise. The State does not cite to any case that supports the proposition that a breach may be cured by a lack of intent on the part of the violating party. I am satisfied that no such case law exists. If prosecutors desire to avoid the dissent's proverbial "potted plant" model, they can do so by not negotiating pleas and entering into plea agreements that they then must honor.

¶ 23.  The confusion attending plea agreement violations in Wisconsin is evident in the postconviction testimony of Williams's trial counsel. In response to a question about his decision to object to the prosecutor's comments as violating the plea agreement, Williams's attorney, Wilfred P. de Junco, a seasoned and capable defense counsel, responded that he was not sure at the

17

time of the objection if there had been a breach of the plea agreement, but that he "thought it was safer to raise an objection and to try to clarify the issue." The trial court, however, was sure of the breach and responded accordingly. The trial court never changed its ruling that a breach occurred at sentencing, but concluded postconviction that the breach was excused because it was not intended by the prosecutor. The record is silent as to the propriety of or need for the sentencing information balancing test urged by the dissent. The ongoing confusion concerning the breach of Wisconsin plea agreements is further highlighted by this district's issuance of an unusual, three-legged opinion.

¶ 24.   While I have some sympathy with the dissent's concern about the continued integrity of the plea bargaining process, I disagree that the facts in this case can result in an unwarranted sentencing "clam up" restriction. The prosecutor not only has a right but a duty to provide information to the sentencing court. Moreover, there is nothing wrong with the prosecutor providing his or her opinion of the defendant's character, even if negative, to the sentencing court so long as the opinion is used *to support* the recommendation. *See Ferguson*, 166 Wis. 2d at 324–25 (recognizing prosecutor's task to attempt to convince the court of the appropriateness of the recommendation). But it makes no sense to allow the prosecutor to render an opinion that appears to argue against his or her own negotiated recommendation. Here, in the majority view, the prosecutor did just that. The prosecutor's remarks cannot be interpreted to support a recommendation for probation with sixty days in jail.

¶ 25.   The majority opinion correctly concludes that a case involving a prosecution plea agreement vio-

lation should favor the defendant. That result is not unreasonable given the benefit derived by the State in obtaining a defendant's waiver of constitutional rights, a conviction without trial, its knowledge and understanding of the agreement it negotiated, and its duty to honor that agreement. Given the constitutional protections that a defendant surrenders to obtain such an agreement, and the lack of legal certainty in Wisconsin as to when the duty to honor a plea agreement is violated, each case must be addressed on its own merits and a defendant should be entitled to the benefit of his or her bargain.

¶ 26.   I respectfully concur that Williams is entitled to a resentencing with the full benefit of the plea agreement that he bargained for and from which he expected to benefit.

¶ 27.   NETTESHEIM, J. *(dissenting)*. The majority opinion reduces the prosecutor to the proverbial "potted plant" at a sentencing hearing under this kind of plea agreement. For that reason, I respectfully dissent.

¶ 28.   As the majority concedes, the law permits a prosecutor in this kind of setting to convey information to the sentencing court which is unfavorable to a defendant so long as the prosecutor abides by the plea agreement. *See State v. Hanson*, 232 Wis. 2d 291, 302, 606 N.W.2d 278 (Ct. App. 1999), *review denied*, 234 Wis. 2d 177, 612 N.W.2d 733 (Wis. Apr. 26, 2000) (No. 99–0120–CR). I contend that the prosecutor's sentencing statements represented a proper balance between her duty to honor the plea agreement and her duty to convey relevant information to the sentencing court. Therefore, I disagree with the majority's holding that

the prosecutor's sentencing statements violated the terms of the plea agreement.

¶ 29.  *Hanson* is informative to this case both on its law and on its facts. In *Hanson*, the plea agreement required the State to cap its sentencing recommendation at ten years. *See id.* at 293. In the course of her sentencing remarks, the prosecutor stated that the State was standing by the plea agreement. However, the prosecutor then added:

> Having said that, this is an extremely violent case. This is an individual who constitutes a clear and present danger, not only to the two women who have been in intimate relationships with the Defendant, but also to the community at large. I urge the Court to consider all of the information that has been presented to the Court, in fashioning a sentence that is both fair to the Defendant and to the victim.

*Id.* at 296.

¶ 30.  In assessing whether these statements constituted a breach of the plea agreement, we looked to the entire sentencing proceeding to get "the true flavor" of the prosecutor's remarks. We held that the prosecutor's "[h]aving said that" remark, followed by her negative impressions regarding the defendant, did not breach the plea agreement. *See id.* at 303. In conducting that exercise, we harmonized the concomitant duties of the prosecutor to abide by the plea agreement and to present relevant sentencing information to the court even if the information is unfavorable to the defendant. *See id.* at 301–02.

¶ 31.  *State v. Ferguson*, 166 Wis. 2d 317, 479 N.W.2d 241 (Ct. App. 1991), is also informative. There, the State promised to argue for an imposed and stayed

sentence. At the sentencing when arguing for a substantial sentence, the prosecutor spoke at some length about the severity of the offense, using terms such as "perverted," "worst of all crimes," "the sickest case that I have seen," and referred to the defendant as "sleaze." *See id.* at 319–20. Only after these highly charged comments did the prosecutor recite the State's request for an imposed and stayed sentence. The defendant argued that the prosecutor's inflammatory language violated the plea agreement. *See id.* at 321. The court of appeals disagreed:

> The plea agreement in this case did not prohibit the state from informing the trial court of aggravating sentencing factors. Nor could it. At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot "be immunized by a plea agreement between the defendant and the state." *Elias v. State*, 93 Wis. 2d 278, 285, 286 N.W.2d 559, 562 (1980). A plea agreement which does not allow the sentencing court to be apprised of relevant information is void as against public policy. *State v. McQuay*, 154 Wis. 2d 116, 125–26, 452 N.W.2d 377, 381 (1990) (quoting *Grant v. State*, 73 Wis. 2d 441, 448, 243 N.W.2d 186, 190 (1976), *writ of habeas corpus granted*, 450 F. Supp. 575 (E.D. Wis. 1978).

*Ferguson*, 166 Wis. 2d at 324.

¶ 32.  Here, the very first words spoken by the prosecutor were an accurate and complete recital of the plea agreement followed by the State's sentencing recommendation which was in accord with the agreement: .

> Judge, I believe that when Mr. Williams entered his plea that we had told the Court that we would be recommending a presentence investigation. And that we would be recommending that sentence be

withheld for a period of three years—I am sorry, that he be placed on probation for a period of three years, that he pay arrearages and pay current child support. And then as a condition of the probation he be incarcerated in the county jail for a period of 60 days.

¶ 33.   Later, after the prosecutor had made her other sentencing comments about Williams, she concluded her remarks, stating:

[W]e are standing by our recommendation, and I have not changed that, and that's why I started off by saying we were recommending the three years probation. We had placed that on the record when the defendant entered his plea, and again today at sentencing.

¶ 34.   This case is stronger on its facts than *Hanson* or *Ferguson*. Unlike *Hanson*, where the prosecutor's sentencing recommendation was immediately followed by the qualifying phrase, "[h]aving said that," here the prosecutor's subsequent statement was not introduced with any qualifying language suggesting sub silentio that the prosecutor was no longer adhering to the plea agreement. And unlike *Ferguson*, where the prosecutor's sentencing recommendation did not come until after the prosecutor had spoken about the depravity of the defendant's conduct, here the prosecutor set out the State's compliance with the plea agreement in explicit and unambiguous terms at the very outset of the proceeding and then reaffirmed it at the conclusion of her remarks.

¶ 35.   This case is not governed by *State v. Poole*, 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986). There, new information about the defendant came to light after the plea and before sentencing. The prosecutor

said her recommendation was made "before we knew of the other instances. But that is our agreement." *Id.* at 360. The court held that the "state's use of qualified or negative language in making the sentence recommendation" breached the agreement. *Id.* at 364. As I have noted, the prosecutor's recital of her sentencing recommendation in this case was not couched in qualifying terms. It is also important to note that *Poole* does not bar the State from using negative information that has come to light after the plea and before the sentencing. Rather, the impropriety lies in the prosecutor's recital of the sentencing recommendation accompanied by the simultaneous recital of qualifying or negative language by which the State distanced itself from its own agreement. *See id.*

¶ 36. Here, the prosecutor twice confirmed the plea agreement without accompanying qualifying language suggesting that the agreement did not mean what it said. And since the law allows a prosecutor to convey relevant negative information about a defendant under such a plea agreement, I conclude that the prosecutor's sentencing statement represented the "neutral recitation" required by the law. *See id.* at 362. The trial court also saw it that way in its postconviction ruling. I would uphold the court's ruling.

¶ 37. However, my misgivings about the majority opinion go deeper than my disagreement with the result. A sentencing constitutes a critical phase of a criminal proceeding. *See State v. Anderson*, 222 Wis. 2d 403, 411, 588 N.W.2d 75 (Ct. App. 1998). A prosecutor is an officer of the court and holds a "quasi-judicial" office. *See State v. Neuser*, 191 Wis. 2d 131, 139, 528 N.W.2d 49 (Ct. App. 1995). Agreements by prosecutors not to reveal relevant information to the sentencing judge are against public policy and cannot be respected

23

by the courts. *See Grant v. State*, 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976), *writ of habeas corpus granted*, 450 F. Supp. 575 (E.D. Wis. 1978). At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement between the defendant and the State. *See Elias v. State*, 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980).

¶ 38.  The majority opinion runs afoul of these principles. Until today, plea agreements of this type did not violate public policy because they did not "silence" a prosecutor. But under the majority's interpretation, and particularly under its "close case goes to the defendant" rule, prosecutors are now schooled to remain silent if they have relevant sentencing information that is unfavorable to the defendant. Or, if they choose to speak, they risk violation of the "close case" rule. I see no need for the majority's adoption of the "close case" rule. The cases to date (whether close or not) have addressed each situation on its own facts and its own merits. That approach has served the law well, and I see no need to change it.

¶ 39.  Also until today, prosecutors were entitled to offer their unfavorable personal opinions or impressions regarding a defendant under this kind of plea agreement. But now, in this nonsupport case, the majority makes the startling conclusion that it was somehow improper for the prosecutor to state that Williams, by his manipulative and irresponsible conduct, had intentionally failed to support his child or to establish any kind of relationship with her. I conclude that it was self-evidently proper for the prosecutor to speak to these failures on Williams's part and to label them "disheartening and saddening."

¶ 40. But the majority holds that these statements were improper because they implied a "personal recommendation" as to the proper sentence. Majority at ¶ 8. As with the majority's "close case" rule, the majority's bar against the prosecutor's opinion or impression of a defendant is inconsistent with current law. Surely, the prosecutor's statements in *Hanson* that the crime was "extremely violent" and that the defendant represented "a clear and present danger" were her impressions or opinions. *See Hanson*, 232 Wis. 2d at 296. The same must be said of the prosecutor's highly charged statements in *Ferguson* ("perverted," "sickest case" and calling the defendant "sleaze"). *Ferguson*, 166 Wis. 2d at 319–20. And even in *Poole* where the court held that the prosecutor's remarks violated the plea agreement, the court did not say that a prosecutor could not venture a negative opinion or impression regarding a defendant. *See Poole*, 131 Wis. 2d at 364.

¶ 41. This new prohibition fashioned by the majority will frustrate the flow of important and relevant information to a sentencing court about the defendant, the crime, the victim or other factors bearing on the sentence. That is not the current law, and it is not wise policy for future law.

¶ 42. I also disagree with the majority's condemnation of the prosecutor's remarks offered in support of the victim. Among other rights, article I, section 9m of the Wisconsin Constitution assures that a victim have "the opportunity to confer with the prosecution" and "the opportunity to make a statement to the court at disposition." Who more likely to represent a victim at a sentencing hearing and to make a statement on the victim's behalf than the prosecutor? Moreover, a victim is not bound by a plea agreement and is entitled to seek

a disposition different than that agreed to between the parties. Here the prosecutor clearly indicated in this phase of her remarks that she was speaking to the victim's position, not to the State's obligation under the plea agreement.

¶ 43.  The majority also seems to say that because the victim was present and spoke for herself, the prosecutor was off limits in speaking for her. But I see nothing in the constitutional or statutory provisions covering victim rights which bars such procedure. Moreover, in many cases, the victim may be unable to deliver an articulate statement because of nervousness, fear or intimidation. Putting aside the victim's constitutional and statutory rights, commonsense dictates that the prosecutor should be allowed to speak for the victim under all circumstances.

¶ 44.  Finally, the majority opinion deals a setback to the plea bargaining process. The majority opinion requires the prosecutor to either "clam up" at the sentencing hearing or risk violation of the "close case" rule if information unfavorable to a defendant is divulged. Faced with that Hobson's choice, prosecutors will understandably be reluctant to enter into these kinds of plea agreements in the first instance. This is unfortunate because all concerned—the prosecution, the courts, and, most importantly, defendants—will lose the benefits of this process.

¶ 45.  I have no particular quarrel with calling this case a "close case." I believe we said as much in *Hanson* when we observed that a prosecutor walks a "fine line" under this kind of plea agreement when conveying unfavorable sentencing information about a defendant. *See Hanson*, 232 Wis. 2d at 302. But I do not agree that a "close case" should translate into an auto-

matic holding that such statements constitute a breach of the plea agreement.

¶ 46.    For these reasons, I respectfully dissent.