STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

John D. WILLIAMS, Defendant-Appellant.

Supreme Court

*No. 00–0535–CR. Oral argument October 16, 2001.—Decided January 3, 2002.*

2002 WI 1

(Also reported in 637 N.W.2d 733.)

For the plaintiff-respondent-petitioner the cause was argued by *Sandra L. Nowack,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *John A. Pray* and the *Frank J. Remington Center,* Madison, and oral argument by *John A. Pray.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *State v. Williams,* 2001 WI App 7, 241 Wis. 2d 1, 624 N.W.2d 164 (Ct. App. 2000). The court of appeals reversed a judgment of the Circuit Court for Ozaukee County, Tom R. Wolfgram, Circuit Court Judge, which had denied the motion of John D. Williams, the defendant, for resentencing. The circuit court denied the defendant's motion for post-conviction relief, concluding that the State did not breach the plea agreement at the sentencing proceeding. The court of appeals reversed the judgment of the circuit court,

concluding that the State did breach the plea agreement at the sentencing proceeding, and remanded the cause for resentencing.

¶ 2.　Two issues are presented in this case. First, what standard of review applies in breach of plea agreement cases? We conclude that the terms of the plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact. We further conclude that whether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law.

¶ 3.　Second, did the State breach the plea agreement in the present case and was the breach material and substantial? Whether a plea agreement has been breached is a question of law. We conclude as a matter of law that the State breached the plea agreement in a material and substantial manner. We therefore affirm the decision of the court of appeals that the cause should be remanded to the circuit court for resentencing.

I

¶ 4.　Our first inquiry is the standard of review this court applies in breach of plea agreement cases. This court clearly set forth the standard of review an appellate court is to apply in *State v. Wills,* 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995).

¶ 5.　According to the *Wills* case:

(1) The terms of the plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact.[1] An

---

[1] *State v. Wills,* 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995).

appellate court reviews the circuit court's findings of fact under the clearly erroneous standard of review.[2]

(2) Whether the State's conduct constitutes a breach of a plea agreement is a question of law.[3] The *Wills* case does not explicitly address the standard to be used to review the issue of whether a breach is material and substantial. When a breach is material and substantial,

---

[2] Wis. Stat. § 805.17(2) (1999–2000) ("findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"); *State v. Wills,* 193 Wis. 2d at 277.

[3] *State v. Wills,* 193 Wis. 2d at 277. *See also United States v. Helbling,* 209 F.3d 226 (3d Cir. 2000) (citing *United States v. Moscahlaidis,* 868 F.2d 1357, 1360 (3d Cir. 1989)); *United States v. Schilling,* 142 F.3d 388, 394 (7th Cir. 1998) (citing *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir. 1981)); *United States v. Canada,* 960 F.2d 263, 269 (1st Cir. 1992) (whether the government breached its plea agreement is a question of law and our review is plenary); *United States v. Moscahlaidis,* 868 F.2d at 1360 (3d Cir. 1989) (whether the government's conduct breaches the terms of the plea agreement is a question of law and the review is plenary); *United States v. Calabrese,* 645 F.2d at 1390 (10th Cir. 1981) ("If the pleadings reveal a factual dispute on the issue of breach, the district court must hold a hearing to resolve the factual issues. If the pleadings reveal no disputed factual issues, no hearing is necessary and the court may determine the issue of breach as a matter of law."); *United States v. Cafaro,* 1988 WL 138180 (S.D.N.Y.) ("[I]n this case there is no dispute either as to the terms of the agreement or the act occasioning the breach. Therefore no hearing is necessary and this Court determines, as a matter of law . . . that Cafaro breached his cooperation agreement.") (citing *United States v. Calabrese,* 645 F.2d at 1390) (10th Cir. 1981)).

a plea agreement may be vacated[4] or resentencing ordered.[5] We conclude that the question of material and substantial breach is one of law because the court is determining whether the facts fulfill a particular legal standard.[6] This court determines questions of law independently of the circuit court and court of appeals, but benefiting from their analyses.

(3) Some breach of plea agreement cases present both disputed questions of fact and questions of law. In such cases, this court reviews the facts under a clearly erroneous standard of review and then determines questions of law independent of the circuit court and court of appeals, but benefiting from their analyses.[7]

¶ 6. The parties appear to agree that the *Wills* case has set forth the appropriate standard of review in breach of plea agreement cases. But the parties disagree about two issues that are tangentially related to the standard of review and that are related to each other: the "clear and convincing evidence" rule and the "close case" rule. We do not adopt either of these rules because they would incorrectly apply an evidentiary standard for the burden of persuasion as a standard of review for questions of law.

¶ 7. The first issue tangentially related to the standard of review is the "clear and convincing evidence" rule. Several cases both before and after *Wills*

---

[4] *See, e.g., State v. Smith,* 207 Wis. 2d 258, 272, 558 N.W.2d 379 (1997); *State v. Bangert,* 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986); *State v. Rivest,* 106 Wis. 2d 406, 414, 216 N.W.2d 395 (1982).

[5] *State v. Smith,* 207 Wis. 2d at 281–82.

[6] *State v. Brandt,* 226 Wis. 2d 610, 618, 594 N.W.2d 759 (1999); *Dep't of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 713, 281 N.W.2d 94 (1979).

[7] *State v. Wills,* 193 Wis. 2d at 277.

appear to promulgate a clear and convincing evidence burden of persuasion. These cases declared that a defendant who asserts a breach of a plea agreement must show, "by clear and convincing evidence, not only that a breach occurred, but also that it was material and substantial."[8]

---

[8] *State v. Jorgensen,* 137 Wis. 2d 163, 168, 404 N.W.2d 66 (Ct. App. 1987). *Jorgensen* was decided before the *Wills* case.

For other cases decided before *Wills* that use the clear and convincing evidence language, see, for example, *State v. Bangert,* 131 Wis. 2d at 289 (a party seeking to vacate a plea agreement has the burden of establishing by clear and convincing evidence both the breach and that the breach was sufficiently material to warrant releasing the party from its promises); *State v. Windom,* 169 Wis. 2d 341, 347, 485 N.W.2d 832 (Ct. App. 1992) (whether a breach of contract exists involves a question of law; party asserting a breach of a plea agreement must show by clear and convincing evidence, not only that a breach occurred, but also that it was material and substantial).

For a case decided after *Wills* that uses the clear and convincing evidence language, see *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 643, 579 N.W.2d 698 (1998). The *Warren* court concluded that a party seeking to vacate a plea agreement must establish by clear and convincing evidence that a material and substantial breach of the agreement has occurred, citing *State v. Bangert,* 131 Wis. 2d at 289, and *State v. Jorgensen,* 137 Wis. 2d at 168. The *Warren* court also concluded, in apparent conflict with the ruling just stated, that the facts relating to the terms of the plea agreement and the prosecutor's actions in that case were not in dispute and therefore a question of law was presented to be reviewed de novo, citing *State v. Wills,* 193 Wis. 2d at 277, and *State v. Ferguson,* 166 Wis. 2d 317, 320–21, 479 N.W.2d 241 (Ct. App. 1991).

The appellate court in these cases did not apply a clear and convincing evidence standard as a standard of review. Rather,

¶ 8. This language intimates that whether a breach exists and whether the breach is material and substantial are questions of fact to be proved by clear and convincing evidence. Indeed in *State v. Jorgensen,* 137 Wis. 2d 167, 169, 404 N.W.2d 66 (Ct. App. 1987), the court of appeals unambiguously stated that "whether a breach of contract exists involves a question of fact." Other court of appeals cases, however, both before and after *Jorgensen,* viewed the question of whether the State breached the plea agreement as a question of law.[9] In *State v. Ferguson,* 166 Wis. 2d 317, 320–21, 479 N.W.2d 241 (Ct. App. 1991), a decision rendered after the *Jorgensen* case and without citing *Jorgensen,* the court of appeals declared that whether the State's conduct breached the terms of the plea agreement is a question of law reviewed de novo.[10]

---

the appellate court made its own determination, as a question of law, whether the breach occurred and whether it was substantial and material.

In many cases involving breaches of plea agreements, no reference is made to the clear and convincing evidence rule. *See, e.g., State v. Smith,* 207 Wis. 2d 258; *State v. McQuay,* 154 Wis. 2d 116, 452 N.W.2d 377 (1990); *State v. Hanson,* 2000 WI App 10, 232 Wis. 2d 291, 606 N.W.2d 278 (Ct. App. 1999); *State v. Knox,* 213 Wis. 2d 318, 570 N.W.2d 599 (Ct. App. 1997); *State v. Ferguson,* 166 Wis. 2d 317; *State v. Poole,* 131 Wis. 2d 359, 394 N.W.2d 909 (Ct. App. 1986).

[9] For cases prior to *Jorgensen,* see, e.g., *State v. Poole,* 131 Wis. 2d at 361 (concluding that when the facts are undisputed, whether a breach occurred is a question of law).

For cases after *Jorgensen,* see, e.g., *State v. Knox,* 213 Wis. 2d at 321 (concluding that whether the State breached the plea agreement is a question of law).

[10] *State v. Ferguson,* 166 Wis. 2d at 320–21 (citing *State v. Poole,* 131 Wis. 2d at 361 (facts were undisputed) and *United*

¶ 9. The *Jorgensen* and *Ferguson* cases cannot be readily reconciled.[11] Indeed the State's brief in *Wills* called the court's attention to this conflicting line of cases that promulgated two different standards of review and argued in favor of the standard of review that the *Wills* court adopted.

¶ 10. The *Wills* decision explicitly declares that determining the existence of a breach is a question of law, resolving the two different standards of review set forth in prior cases. *Wills* cites *Jorgensen* for the proposition that when there is a dispute about facts, then the appellate court gives deference to the factual findings of the circuit court unless clearly erroneous.[12] It cites *Ferguson* for the proposition that when there are no disputed facts on appeal, the question of whether the State breached the terms of the agreement is a question of law that is determined de novo.[13] *Wills* then concludes that if there is both a disputed question of fact and a question of whether the facts establish a breach, the court must first review the facts under the clearly erroneous standard of review and then determine as a matter of law under a de novo standard of review whether the State breached the terms of the plea agreement.[14]

---

*States v. Moscahlaidis,* 868 F.2d at 1360 (facts were disputed)).

[11] For a case after *Ferguson* that cites *Jorgensen* (and ignores *Ferguson*) for the proposition that whether a breach of contract exists involves a question of fact, see *State v. Windom,* 169 Wis. 2d at 349 (whether a breach of contract exists involves a question of fact; party asserting a breach of a plea agreement must show by clear and convincing evidence, not only that a breach occurred, but also that it was material and substantial).

[12] *State v. Wills,* 193 Wis. 2d at 277.

[13] *Id.*

[14] *Id.* at 277–78.

¶ 11. Nevertheless, the clear and convincing evidence language continued to have vitality after *Wills*[15] and is discussed by the parties in the present case.

¶ 12. The State's brief in the present case recognizes that clear and convincing evidence ordinarily describes the middle burden of persuasion imposed on a party who has the obligation to prove facts, but concludes that the language has significance for appellate review even though *Wills* sets forth the controlling standard of review.[16] The clear and convincing evidence burden of persuasion describes the affirmative proof a party must produce to establish a fact at issue. The clear and convincing evidence burden is directed to the trier of facts in the circuit court; the clear and convincing evidence burden is not ordinarily a standard of review for an appellate court in determining questions of law.[17]

¶ 13. The State interprets the clear and convincing evidence language used in several cases relating to breach of plea agreements to mean that the defendant must clearly and convincingly persuade this court of the correctness of his position on the questions of law involved in the present case. According to the State, the clear and convincing evidence rule provides guidance to the court concerning the degree of confidence the court should have in its legal conclusions when the issues are

---

[15] *See, e.g., Warren,* 219 Wis. 2d at 643.

[16] State's Brief at 19.

[17] "The function of a standard of proof is to instruct the fact-finder as to the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of proceeding." *Odd S.-G. v. Carolyn S.-G.,* 194 Wis. 2d 365, 378, 533 N.W.2d 794 (1995).

whether a party has breached a plea agreement and whether the breach is material and substantial. The State urges that for the defendant to succeed in the present case, this court must be persuaded clearly and convincingly that the State breached the plea agreement and that the breach was material and substantial.[18]

¶ 14. The State argues that this burden of persuasion for the questions of law is correct because it furthers the public policy favoring finality of judgments, the free flow of information to sentencing courts, the legislative directive protecting rights of crime victims, and the importance of negotiated pleas in efficiently disposing of criminal cases while protecting the public.

■

¶ 15. We are not convinced by the State's argument. Determinations of questions of law are not ordinarily discussed in terms of a burden of persuasion. Furthermore, the State's principal reason for applying the clear and convincing burden of persuasion to these questions of law, namely, to support finality of judgments, is not persuasive. Finality is an important value in criminal cases, as the State argues, but finality must be balanced against an accused's due process right to the benefit of a plea agreement. The State does not offer an explanation, and we cannot think of one, to justify why the values explicated by the State should outweigh, as a matter of law, an accused's due process rights. Accordingly, we do not graft the clear and convincing

[18] It seems that the State is arguing that just as a court must be persuaded beyond a reasonable doubt that a law is unconstitutional, the court must be clearly and convincingly persuaded that a breach occurred and that it was material and substantial.

evidence burden of persuasion to the standard of review applied to questions of law in breach of plea agreement cases.

¶ 16. The second issue tangentially related to the standard of review and to the clear and convincing evidence rule is the "close case" rule, sometimes referred to as the "close call" rule. The State's principal objection to the court of appeals' decision in the present case is to the court of appeals' adoption of the close case rule to evaluate whether the State's conduct constitutes a breach of the plea agreement and whether the breach is material and substantial. Close cases are those in which it is difficult to discern whether the State presented information to the circuit court in a way that implied that the State had second thoughts about the plea agreement.

¶ 17. Under the close case rule, "plea agreements should be construed in favor of the defendants."[19] The defendant interprets the close case rule to create a standard that is "lower" than the "preponderance of the evidence" standard.[20] Thus "under the 'close call' rule, a court may rule that the prosecutor breached the plea agreement even if it is more likely that there was no breach, as long as it is 'close.' In other words, if a court is unsure as to whether a breach occurred, but it is a 'close call,' then the defendant should prevail."[21]

¶ 18. The defendant argues that this court should follow the court of appeals and adopt the close case rule in light of the benefits the State derives from plea

[19] *State v. Witte,* 245 N.W.2d 438, 439 (Minn. 1976).

[20] Defendant's Brief at 29.

[21] *Id.*

agreements, the State's duty to honor those agreements, and the fundamental rights waived by an accused who enters a plea agreement. The State objects to the close case rule, asserting that, under this rule, cases would be decided in favor of an accused even when there was some question whether a breach occurred.

■

¶ 19. We decline to adopt the close case rule as a standard of appellate review for several reasons. First, adoption of the rule would be inconsistent with precedent. Wisconsin courts have not applied the close case rule in previous cases. Second, determinations of questions of law are not ordinarily discussed in terms of burden of persuasion. Third, the close case rule does not give sufficient recognition to the values described by the State in arguing in favor of the clear and convincing evidence rule, such as the finality of judgments, the free flow of information to sentencing courts, the protection of legislatively mandated rights of crime victims, and the importance of negotiated pleas in efficiently disposing of criminal cases while protecting the public.

■

¶ 20. For the reasons set forth, we review the circuit court's determination of historical facts, such as the terms of the plea agreement and the State's conduct that allegedly constitutes a breach, under the clearly erroneous standard of review and then determine whether the State's conduct constitutes a substantial and material breach of the plea agreement as a question of law. Consequently, we reject the clear and convincing evidence rule and the close case rule.

## II

¶ 21. The parties disagree about the application of the standard of review to the present case.

¶ 22. We first review the facts in the present case. We then apply the standard of review to the facts of this case.

¶ 23. The defendant was charged with two felony counts of failure to pay child support. The State and the defendant entered into a plea agreement.

¶ 24. The terms of the plea agreement are not in dispute. The defendant agreed to plead guilty to one count of failure to pay child support, to pay all arrearages, and to pay current child support, in exchange for the State's promise to dismiss the other count and recommend a sentence of three years' probation with 60 days in the county jail.[22] A sentencing court is not bound or controlled by any understanding between an accused and the State regarding the sentence, and a sentencing court may not participate in a plea agreement.[23]

¶ 25. The circuit court accepted the plea and ordered a presentence investigation. The presentence investigation report recommended "a medium term of imprisonment." The circuit court sentenced the defendant to 18 months in prison.

¶ 26. The State's conduct allegedly constituting a breach of the plea agreement is not in dispute. The

---

[22] Although it is not clear that the jail time recommendation was part of the plea agreement, the defendant does not object to the State's recommendation, and it is not an issue in the case.

[23] *Young v. State,* 49 Wis. 2d 361, 366, 182 N.W.2d 262 (1971).

State's exact words are preserved in the record. The significant words at the sentencing hearing that are alleged to constitute the breach relate to the prosecutor's comments on the presentence investigation report and on the prosecutor's conversation with the defendant's ex-wife. We set forth at length the prosecutor's remarks at sentencing, as well as the defendant's and circuit court's responses:

> Judge, I believe that when [the defendant] entered his plea that we had told the Court that we would be recommending a presentence investigation. And that we would be recommending that sentence be withheld for a period of three years—I am sorry, that he be placed on probation for a period of three years, that he pay arrearages and pay current child support. And then as a condition of the probation he be incarcerated in the county jail for a period of 60 days.
>
> *After reading through the presentence, it appears that I think I can best describe my impression of this defendant as manipulative and unwilling to take responsibility. I have had occasion to speak with [the defendant's ex-wife]. And she has indicated things that she will be presenting to the Court. But it was quite a contrast, speaking with her and reading and learning about [the defendant].*
>
> Judge, when she [the defendant's ex-wife] speaks to you you are going to learn about a mother who has done everything she can for her daughter, has taken on the obligation, the responsibilities of raising a child, and has had to do it on her own because the father of that child [the defendant] has done everything to completely do the opposite. He has taken on no real meaning in terms of creating a relationship. And you will learn of some of that later on. *It's quite frankly disheartening and saddening to know that someone could have a daughter who . . . has turned 18, and with all the*

*opportunities to have a relationship, denied that. And it hasn't been because the mother has denied it, it is the defendant himself. He always had free access and chose—he made the choice not to have a relationship. When we create life we have to take on the responsibility.* You will also learn there was a time where through the Child Support Agency there were many efforts to get Mr. Williams to pay child support. We are talking about a nominal amount of money he was ordered to pay, $50 a week. I don't think any of us think that that's extravagant. That's just minimal. And he was working at a job earning $14 an hour, had health insurance, but yet never included his daughter on it. And you are going to learn of some health problems that the daughter has that the health insurance certainly would have been of great assistance.

When speaking with [the defendant's ex-wife], she informed me that at one point when she remarried to a very caring person who took on Mr. Williams' daughter as his own, and when they wanted to adopt her, Mr. Williams refused to give up his rights, but yet he wouldn't call, he didn't write, he didn't see, he wouldn't even pay the support for his daughter. *It just is very frustrating to think that someone could completely walk away and be so uncaring about a child.*

The presentence writer, we had a conversation on June 8th with her. She had indicated she would be in court, but I don't see that she has arrived. She had made a few comments that I will relay to the court. ... She reiterated to [prosecutor] Mr. Sisley that it was her belief that the defendant needs to go to prison. ... She had indicated that she was aware that the defendant had a cell phone, and the defendant had been driving all around and has access to a vehicle. He has been arrested for operating while suspended in the past. ... *She reiterated to Mr. Sisley that it was her belief that the defendant needs to go to prison.* (Emphasis added.)

512

¶ 27. At this point, the defendant objected and argued that the State was undercutting its sentencing recommendation by relaying information that did not reflect the State's position and that the State was covertly changing its sentencing recommendation. The defense counsel addressed the circuit court as follows:

> Judge, I am just going to object here. The state seems to be undercutting its recommendation to the Court by relaying things that are not the state's position, they are an agent's position. Her comments are in the P.S.I. And I have at a certain point—I am not sure where—to object. But it seems to me that the state is in essence seems to be undermining the recommendation that was put out and which Mr. Williams entered a plea. So I guess I am just calling—raising an objection here and seeing where we are going with this. Because it seems to me that obviously the state can make its argument, but I think if it gets to the point where the state is basically saying we want to change our recommenda- · tion, or we think the Court should without saying so, that's certainly something that is a problem.

¶ 28. The circuit court responded, "I agree." Apparently the circuit court was agreeing that it would be a problem if the State changed its recommendation but was not ruling on defense counsel's objection.

¶ 29. The prosecutor then explicitly stated that she was not changing her recommendation and that she was only relaying information from the author of the presentence investigation report because the author of the presentence investigation report was not present. The prosecutor's reply to the defense counsel's statement is as follows:

> And Judge, if I indicated anything other than what our recommendation is, the presentence was here. We were prepared to go to sentencing, and the agent relayed this

513

information to us. And I am merely supplying the Court with that information. I am in no means suggesting that I am asking the Court to adopt the agent's recommendation. I believe that the sentencing court should have all the information necessary. And I am just merely relaying it. She had indicated she would be here, and that was the information she had given us. So again I will reiterate, Judge, we are standing by our recommendation, and I have not changed that, and that's why I started off by saying we were recommending the three years probation. We had placed that on the record when the defendant entered his plea, and again today at sentencing.

¶ 30. Thereafter, the defendant's ex-wife addressed the court and asked for justice for having been forced to raise the child as a single parent without financial assistance from the defendant. She made no recommendation regarding the sentence. The defendant then requested that the court follow the State's recommendation to place him on probation.

¶ 31. The parties disagree about how the prosecutor's words at the sentencing hearing should be interpreted, especially the words emphasized above.

¶ 32. The State argues that the circuit court correctly interpreted the prosecutor's words to be a mere summary of the presentence investigation report and the victim's pending statement. The State further argues that the circuit court's interpretation of the prosecutor's words, although not characterized as a finding of fact by the circuit court, is a factual determination to which the clearly erroneous standard of review applies.

¶ 33. The State reasons that the circuit court's interpretation should be accorded the deference of the clearly erroneous standard of review because the circuit court had the "vantage point" of being in the room when

the prosecutor spoke and "presumably heard voice inflections, observed facial expressions, and listened to pauses that are not ordinarily captured in cold transcripts."[24]

¶ 34. The circuit court in the present case did not, however, base its interpretation of the prosecutor's comments on its recollection of the sentencing hearing, which would have included memories of voice inflections, observed facial expressions, and pauses in the testimony.[25] The post-conviction hearing was held seven months after the sentencing proceeding, and it is obvious from the record that the circuit court did not recollect the sentencing proceedings. Rather, the circuit court interpreted the prosecutor's comments by reading the written record of the plea and sentencing hearings.

¶ 35. The meaning of words in a document that is not dependent on a fact-finder's appraisal of the demeanor or credibility of a witness is a question of law to be determined independently by the reviewing court.[26] Thus, the interpretation of the written transcript of the prosecutor's comments in the present case is a question

---

[24] State's Brief at 31.

[25] The defendant and the defendant's trial counsel testified at the post-conviction hearing but their testimony is not relevant to the issue discussed here.

[26] *Levy v. Levy,* 130 Wis. 2d 523, 528–29, 388 N.W.2d 170 (1986) (premarital agreement); *Edlin v. Soderstrom,* 83 Wis. 2d 58, 69, 264 N.W.2d 275 (1978) (deed); *RTE v. Maryland Cas. Co.,* 74 Wis. 2d 614, 621, 247 N.W.2d 171 (1976) (insurance policy); *Am. Mut. Liab. Ins. Co. v. Fisher,* 53 Wis. 2d 299, 303, 206 N.W.2d 152 (1973) (lease); *State v. Windom,* 169 Wis. 2d at 348–49 (plea agreement).

of law to be determined independently by this court, not a question of fact to be given deference as the State asserts.

## III

¶ 36. We now apply the standard of review to the facts of the present case. We must determine the questions of law presented: Did the State breach the plea agreement and was the breach material and substantial?

¶ 37. The principal rule of law applicable to the present case is that an accused has a constitutional right to the enforcement of a negotiated plea agreement.[27] An agreement by the State to recommend a particular sentence may induce an accused to give up the constitutional right to a jury trial.[28] Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain.[29]

---

[27] See, e.g., State v. Smith, 207 Wis. 2d at 271; State v. Scott, 230 Wis. 2d 643, 651, 602 N.W.2d 296 (Ct. App. 1999) (citing Mabry v. Johnson, 467 U.S. 504, 507–08 (1984)).

[28] State v. Smith, 207 Wis. 2d at 271.

[29] Santobello v. New York, 404 U.S. 257, 262 (1971). See also State v. Bond, 139 Wis. 2d 179, 188, 407 N.W.2d 277 (Ct. App. 1987) ("Essentially any violation of a prosecutorial promise triggers considerations of fundamental fairness and is a deprivation of due process.") (emphasis omitted).

¶ 38. A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement.[30] An actionable breach must not be merely a technical breach; it must be a material and substantial breach.[31] When the breach is material and substantial, a plea agreement may be vacated or an accused may be entitled to resentencing.[32] A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained.[33]

¶ 39. In the present case, the State accurately stated before the circuit court the terms of the plea agreement that were agreed to between the State and the defendant and confirmed the State's sentencing recommendation under the plea agreement. But the defendant contends that the State breached the plea agreement when it discussed the presentence investigation report, which recommended a medium term of incarceration, and previewed the victim's statement, which focused on the defendant's failure to support his child both financially and emotionally. The defendant asserts that the State undercut the plea agreement by implicitly conveying the message that it was questioning the wisdom of the plea agreement.

---

[30] *State v. Smith,* 207 Wis. 2d at 272 (citing *State v. Poole,* 131 Wis. 2d at 364).

[31] *See, e.g., Warren,* 219 Wis. 2d at 643; *State v. Smith,* 207 Wis. 2d at 272; *State v. Bangert,* 131 Wis. 2d at 289–90.

[32] *State v. Smith,* 207 Wis. 2d at 272; *State v. Bangert,* 131 Wis. 2d at 268; *State v. Rivest,* 106 Wis. 2d at 414 (1982); *State v. Windom,* 169 Wis. 2d at 349; *State v. Jorgensen,* 137 Wis. 2d at 168.

[33] *State v. Bangert,* 131 Wis. 2d at 289–90; *State v. Knox,* 213 Wis. 2d at 323.

¶ 40. The courts have explained the responsibilities of the State when setting forth the plea agreement to the sentencing court in the following variety of ways.

¶ 41. As Court of Appeals Judge Neal P. Nettesheim stated in his dissent in the present case, a prosecutor must not be the proverbial potted plant at a sentencing hearing.

¶ 42. While a prosecutor need not enthusiastically recommend a plea agreement,[34] the court of appeals has stated that he or she "may not render less than a neutral recitation of the terms of the plea agreement."[35] "End runs" around a plea agreement are prohibited.[36] "The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended."[37]

¶ 43. Neither may a prosecutor agree to keep relevant information from the sentencing judge, according to the court of appeals.[38] Such an agreement is against public policy and cannot be respected by the

---

[34] *State v. Poole,* 131 Wis. 2d at 364.

[35] *Id.*

[36] *State v. Hanson,* 2000 WI App 10, ¶ 24.

[37] *Id.; State v. Ferguson,* 166 Wis. 2d at 322.

[38] The prosecutor is an officer of the court and holds a "quasi-judicial" office. A prosecutor's interest is not to win a case but to see that justice shall be done. A prosecutor may strike hard blows but not foul ones. *State v. Neuser,* 191 Wis. 2d 131, 139, 528 N.W.2d 49 (Ct. App. 1995).

court.[39] This rule is intended to protect the integrity of the sentencing process by ensuring that the court charged with determining the sentence is not intentionally deprived of relevant information concerning the accused at the time of sentencing.[40] At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement between the defendant and the State.[41]

¶ 44. The State must balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement. Thus, as the court of appeals has written, the State must walk "a fine line" at a sentencing hearing.[42] A prosecutor may convey information to the sentencing court that is both favorable and unfavorable to an accused, so long as the State abides by the plea agreement. That line is fine indeed.

¶ 45. The defendant argues that the State stepped over the fine line by appearing to adopt as its own view the unfavorable information about the defendant from the presentence investigation report and the ex-wife, rather than merely relaying that information to the sentencing court. The defendant contends that the State intimated to the court that it no longer supported the plea agreement.

---

[39] *See Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976), writ of habeas corpus granted, 450 F. Supp. 575 (E.D. Wis. 1978).

[40] *State v. McQuay,* 154 Wis. 2d at 126.

[41] *Elias v. State,* 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980).

[42] *State v. Hanson,* 2000 WI App 10, ¶ 27.

¶ 46. We must examine the entire sentencing proceeding to evaluate the prosecutor's remarks.[43] Upon reviewing the State's comments in the context of the sentencing hearing, we conclude, as a matter of law, that the State stepped over the fine line between relaying information to the circuit court on the one hand and undercutting the plea agreement on the other hand. The State substantially and materially breached the plea agreement because it undercut the essence of the plea agreement.

¶ 47. In this case the State's recitation of the plea agreement was less than neutral. In her statements to the sentencing court, the prosecutor implied that had the State known more about the defendant, it would not have entered into the plea agreement. For example, the prosecutor stated, "*After reading through the presentence,* it appears that I think I can best describe my impression of this defendant as manipulative and unwilling to take any responsibility. I have had an occasion to speak with [the defendant's ex-wife]. And she has indicated things that she will be presenting to the Court. *But it was quite a contrast,* speaking with her and reading and learning about [the defendant]." (Emphasis added.)

¶ 48. The State adopted the information acquired from the presentence investigation report after the plea agreement had been reached as its own opinion of the defendant. The prosecutor's declaration of her personal opinion created the impression that the prosecutor was arguing against the negotiated terms of the plea agreement. We agree with the court of appeals that "what the prosecutor may not do is personalize the information,

---

[43] *Id.* at ¶ 26.

adopt the same negative impressions as [the author of the presentence investigation report] and then remind the court that the [author] had recommended a harsher sentence than recommended. That is what happened here."[44]

¶ 49. The impression that the State was backing away from the plea agreement was furthered by the fact that the prosecutor began her comments to the sentencing court by stating, "When Mr. Williams entered his plea . . . we had told the Court that we *would be* recommending . . . that he be placed on probation, that he pay arrearages and pay current child support." (Emphasis added.) The words "would be" intimate that a change of the State's plans would be revealed.

¶ 50. The State did not merely recite the unfavorable facts about the defendant to inform the circuit court fully. Rather, the State covertly implied to the sentencing court that the additional information available from the presentence investigation report and from a conversation with the defendant's ex-wife raised doubts regarding the wisdom of the terms of the plea agreement. The State cannot cast doubt on or distance itself from its own sentence recommendation.[45] Although the State is not barred from using negative information about the defendant that has come to light after the plea agreement and before the sentencing, the State may not imply that if the State had known more about the defendant, the State would not have entered into the plea agreement.[46] The State was distancing

[44] *State v. Williams,* 2000 WI App 7, ¶ 12.

[45] *State v. Poole,* 131 Wis. 2d at 364. *See also United States v. Canada,* 960 F.2d at 269–270.

[46] *State v. Poole,* 131 Wis. 2d at 364.

itself from the recommendation in the present case by implying its reservations about the sentence agreement.

¶ 51. The prosecutor's affirmation of the plea agreement was not adequate to overcome the prosecutor's covert message to the circuit court that a more severe sentence was warranted than that which had been recommended.[47] After the defendant objected to the State's discussion of the presentence investigation report and the ex-wife's statements, the State affirmed its decision to proceed with the plea agreement. Despite stating its intention to stand by the plea agreement, the State had adopted as its own opinion the negative information regarding the defendant that was otherwise available to the court. This information was unnecessary to explain or support the agreement that the State would recommend the minimum sentence of probation; the information supports a more severe sentence of a prison term.

¶ 52. This case presents a close question. The overall impression from reading the entire record of the sentencing hearing is, however, that the State's comments affirming the plea agreement were too little, too

---

[47] Contrast the present case with *State v. Knox,* 213 Wis. 2d at 322, in which the prosecutor misstated the sentencing recommendation as one for consecutive rather than concurrent prison terms. In *Knox,* the breach was not actionable because the prosecutor misstated a term of the plea agreement but promptly acknowledged the mistake of fact and rectified the error without impairing the integrity of the sentencing process. In the present case, the prosecutor did not acknowledge in any way that her statements adopting the unfavorable comments about the defendant were a less than neutral recitation of the plea agreement. She merely reiterated the plea agreement.

late. We agree with the court of appeals that "just because the prosecutor says there was no breach does not make it so."[48] That the prosecutor did not intend to breach the agreement or that a breach was inadvertent "does not lessen its impact."[49]

¶ 53. The determination of law whether a breach occurred and whether the breach was substantial and material requires a careful examination of the facts. It is helpful to examine other cases involving breaches of plea agreements to test our conclusion about the present case, even though each case turns on the respective facts presented.

¶ 54. In *State v. Poole,* 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986), the prosecutor and defendant reached a plea agreement in which the prosecutor would recommend a monetary fine. At the sentencing hearing the prosecutor recommended the fine, but also indicated the agreement was made before other information was known. Although the prosecutor reiterated support for the plea agreement, the court of appeals concluded that the prosecutor functionally told the circuit court that the circuit court should ignore or reject the plea agreement.[50] The court of appeals concluded that the prosecutor impermissibly undercut the plea agreement by using qualified language that implied reservations about the plea agreement. The court of appeals remanded the cause for resentencing. Like the prosecutor in *Poole,* the State in the present case also implied a lack of support for the plea agreement,

---

[48] *State v. Williams,* 2000 WI App 7, ¶ 14.

[49] *Santobello v. New York,* 404 U.S. at 262.

[50] *State v. Poole,* 131 Wis. 2d at 360.

despite accurately stating its terms and reiterating support for the plea agreement.

¶ 55. In *State v. Hanson,* 2000 WI App 10, 232 Wis. 2d 291, 606 N.W.2d 278 (Ct. App. 1999), the court of appeals concluded that the State did not breach the plea agreement by highlighting the violent nature of the accused's crime when recommending a 10–year sentence for an offense with a 15–year maximum. The prosecutor used the violent nature of the crime to justify its recommendation of a sentence at the high end of the sentencing range. The prosecutor affirmed the plea agreement in *Hanson* and made no statements that implied that the State no longer adhered to the plea agreement. Unlike *Hanson,* the State in the present case did not use the unfavorable information to support the recommendation of probation. Rather, the unfavorable information the State supplied undercut the plea agreement to recommend probation and appeared to suggest that a harsher sentence was appropriate.

¶ 56. In *State v. Jorgensen,* 137 Wis. 2d 163, 168, 404 N.W.2d 66 (Ct. App. 1987), the court of appeals upheld the circuit court's determination that the prosecutor did not breach a plea agreement to refrain from recommending or commenting at the sentencing hearing upon a specific sentence that the circuit court should impose. During the sentencing hearing, the defense counsel was factually discrepant in the description of the offense. This factual discrepancy prompted the prosecutor to comment on the offense during the sentencing hearing, drawing an objection from the accused that the prosecutor's comments breached the plea agreement. The circuit court sentenced the accused to 20 months of incarceration and later denied the accused's post-conviction motion seeking enforce-

ment of the plea agreement. The court of appeals affirmed the circuit court's denial of the defendant's post-conviction motion, reasoning that the prosecutor's comments at the sentencing hearing did not breach the plea agreement because public policy prohibited a plea agreement from requiring the State to remain totally silent at the sentencing hearing. The court noted that "a plea agreement which forces a prosecutor to stand mute regardless of the nature or accuracy of the statements made at the sentencing hearing runs contrary to the truth seeking purpose of all judicial proceedings."[51] Unlike *Jorgensen,* the State's conduct in the present case went beyond merely correcting any factual inaccuracies presented by the defendant. The State's adoption of unfavorable information in the presentence investigation report and the ex-wife's testimony impermissibly undercut the State's sentencing recommendation.

¶ 57. In *State v. Ferguson,* 166 Wis. 2d 317, 322, 479 N.W.2d 241 (Ct. App. 1991), the court of appeals upheld a circuit court's denial of the accused's motion for post-conviction relief, stating that the prosecutor's denigrating remarks regarding the accused did not breach the plea agreement. The plea agreement required the prosecutor to argue for a stayed sentence, but the agreement did not prohibit the prosecutor from arguing the length of the sentence to be imposed. The court of appeals reasoned that the prosecutor's remarks were appropriate in light of the unusual terms of the plea agreement. Whereas the prosecutor in *Ferguson* complied with the plea agreement when arguing for a stayed sentence while seeking the maximum length sentence, the prosecutor's statements in the present

---

[51] *State v. Jorgensen,* 137 Wis. 2d at 169.

case undercut the plea agreement, resulting in a material and substantial breach.

¶ 58. In *State v. Smith,* 207 Wis. 2d 258, 272, 558 N.W.2d 379 (1997), this court remanded the cause for new sentencing, holding that the prosecutor materially and substantially breached the plea agreement by recommending 58 months of incarceration. The terms of the plea agreement required the State to make no recommendation to the circuit court regarding the length of sentence imposed. The effect of the State's conduct in the present case, like the effect of the prosecutor's conduct in *Smith,* was to undercut the plea agreement, thereby depriving the defendant of the benefit of his bargain and rendering the sentencing proceeding fundamentally unfair.

¶ 59. In summary, we conclude that the prosecutor's statements at the sentencing hearing undercut the· defendant's plea agreement, resulting in a material and substantial breach of the defendant's plea agreement. Consequently, we affirm the decision of the court of appeals reversing the judgment of the circuit court denying the defendant's motion for resentencing, and we remand the cause to the circuit court for resentencing.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 60. JON P. WILCOX, J. (*concurring in part, dissenting in part*). I agree with the court's holdings in sections I and II. However, I disagree with the majority's conclusion that the State materially and substantially breached the plea agreement in this case. The majority's decision on that issue gives insufficient consideration to the long-standing policy of making all relevant information available to a sentencing judge,

and it will substantially hamper the State's ability to negotiate plea agreements in the future. For these reasons, I respectfully dissent.

¶ 61. As the majority notes, the prosecutor in a case such as this has the challenge of negotiating the line between two important and competing principles of law. The public has a right to have the judge consider all relevant information during a sentencing hearing, *Farrar v. State,* 52 Wis. 2d 651, 656–57, 191 N.W.2d 214 (1971), while at the same time the defendant has a due process right to get the benefit of any plea agreement entered into with the State. *State v. Smith,* 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997). The prosecutor is at the crux of this dilemma. As a quasi-judicial officer, the prosecutor must not only advocate for the State's position, but must also see that justice is done. *Koenig v. State,* 215 Wis. 658, 659, 255 N.W. 727 (1934). We are asked in this case if the prosecutor was successful in her attempt to balance these interests. I contend that she was.

¶ 62. We have recognized that the sentencing process is a search for the truth. *Farrar,* 52 Wis. 2d at 657. Accordingly, a sentencing court is entitled to consider "all the factors and a recommendation based on all of the facts then in the record." *Id.* at 656 (quoting *Young v. State,* 49 Wis. 2d 361, 369, 182 N.W.2d 262 (1971)). This right to consider all of the relevant facts goes beyond the judge's role as an independent sentencing authority, *Melby v. State,* 70 Wis. 2d 368, 385–86, 234 N.W.2d 634 (1975), and recognizes that the community has a stake in a fair, accurate, and fully-informed sentence as well. *Farrar,* 52 Wis. 2d at 656–57.

¶ 63. It is for this reason that the State is not prevented from informing the court of pertinent sentencing factors, *Elias v. State,* 93 Wis. 2d 278, 285, 286

N.W.2d 559 (1980), which can include negative character traits of the defendant. *State v. Ferguson,* 166 Wis. 2d 317, 325, 479 N.W.2d 241 (Ct. App. 1991). This principle is important enough that we have held that plea agreements where the prosecution agrees not to reveal information that is relevant to sentencing are against public policy and will be rejected by the courts. *Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976); *see also State v. McQuay,* 148 Wis. 2d 823, 826, 436 N.W.2d 905 (Ct. App. 1989). The prosecutor not only has a right, but a responsibility to bring relevant sentencing information to the attention of the court.

¶ 64. Still, despite our pronouncements that the court should consider all relevant information, we have recognized that the policy is not unassailable. When a defendant has validly negotiated a plea agreement with the State, the defendant has a due process right to receive the benefit of that agreement. *Smith,* 207 Wis. 2d at 271. Accordingly, the State is under certain limitations when carrying out its side of a plea agreement. The State cannot recommend something different than what was promised, or explicitly promise to make no recommendation, then make one. *Id.* at 272–73. Similarly, the prosecutor cannot undermine a plea agreement through the use of negative or qualifying language. *State v. Poole,* 131 Wis. 2d 359, 364, 394 N.W.2d 909 (Ct. App. 1986). Although the prosecutor is not required to advocate strongly for a recommendation, the prosecutor must clearly communicate support for the recommendation. *Id.*

¶ 65. Any breach of the plea agreement must be "material and substantial." *Smith,* 207 Wis. 2d at 272; *State v. Bangert,* 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986). That is, the breach must deprive the defendant of a material and substantial benefit for which he or she

528

bargained. *Bangert,* 131 Wis. 2d at 290. We have said that a material and substantial breach will amount to a "manifest injustice." *Id.* at 289.

¶ 66. Here, I would hold that the prosecutor successfully balanced her competing responsibilities and did not breach the plea agreement. The prosecutor clearly and accurately expressed her recommendation, she did not qualify it or back away from it, and she did not undermine her recommendation to the court. I would find that the prosecutor clearly delineated the contents of the pre-sentence investigation (PSI) and the recommendations of the PSI writer from the recommendations of the State. The prosecutor communicated the information from the PSI in a neutral manner, and those facts were relevant to the judge's sentencing decision.

¶ 67. In this case, the prosecutor clearly informed the court of the State's recommendation three separate times. At the plea hearing, the prosecutor laid out the agreement:

> On a plea to one count the state will dismiss the second count. The state will be recommending that the Court impose—withhold sentence, place the defendant on three years of probation, that as conditions of the probation the defendant be, number one, ordered to pay all arrearages, number two, pay all current support, and number three, serve 60 days in the county jail as condition time.

The prosecutor then began the sentencing hearing by restating the plea agreement:

> Judge, I believe that when Mr. Williams entered his plea that we had told the Court that . . . we would be recommending that sentence be withheld for a period of three years—I am sorry, that he be placed on probation

for a period of three years, that he pay arrearages and pay current child support. And then as a condition of probation he be incarcerated in the county jail for a period of 60 days.

And after objection by the defense attorney, the prosecutor concluded her sentencing remarks by reiterating the State's recommendation one last time:

. . . So again I will reiterate, Judge, that we are standing by our recommendation, and I have not changed that, and that's why I started off by saying we were recommending the three years probation. We had placed that on the record when the defendant entered his plea, and again today at sentencing.

The recommendation of the State could not have been made much clearer. Each time, the State's sentencing recommendation was straightforward and unqualified.

¶ 68. When the prosecutor discussed the PSI, the language and recommendation of the PSI writer were distinguished from the recommendation of the prosecutor. Before discussing the contents of the PSI, the prosecutor began with "After reading through the presentence," clearly indicating that what she was about to relay had been derived from the PSI. She later stated "The presentence writer . . . had indicated she would be in court, but I don't see that she has arrived. She had made a few comments that I will relay to the Court." Again, indicating clearly that she was conveying the comments of the PSI writer and not her own recommendations.

¶ 69. After the defense objection, the prosecutor explicitly differentiated the recommendation of the PSI writer from that of the State:

[I]f I indicated anything other than what our recommendation is, the presentence was here. We were

530

prepared to go to sentencing, and the agent relayed this information to us. And I am merely supplying the Court with that information. *I am in no means suggesting that I am asking the Court to adopt the agent's recommendation* ... again I will reiterate, Judge, *we are standing by our recommendation* (emphasis added).

Again, the prosecutor was careful to identify which information came from the PSI and what constituted the State's recommendation. The prosecutor made it clear that the State's recommendation had not changed.

¶ 70. The majority takes issue with the prosecutor's statements "After reading through the presentence, it appears that I think I can best describe my impression of this defendant as manipulative and unwilling to take any responsibility" and "it was quite a contrast." Majority op. at ¶ 47. The majority suggests that, primarily through these two phrases, the State impliedly adopted the recommendation of the PSI writer and abandoned its own. I disagree.

¶ 71. I concede that the prosecutor's statements could be characterized as not enthusiastically supportive of the plea agreement, but there is no requirement that they be enthusiastic. *Poole,* 131 Wis. 2d at 364. The test is only whether or not the recommendation was undercut by the prosecutor's comments—whether the prosecutor explicitly or implicitly suggests that she has changed her mind about her recommendation. Reading the record as a whole, it is clear to me that the prosecutor did not change her mind, nor did she imply that she had. The recommendation of the State was explicitly and accurately repeated on three different occasions, and at none of those times was the recommendation qualified or contradicted.

¶ 72. The majority also criticizes the prosecutor's statement that "we had told the Court that we would be

recommending . . . " as indicative of the State's intent to change its sentencing recommendation. Majority op. at ¶ 49. Coupled with the repeated description of the prosecutor's actions as "covert," majority op. at ¶¶ 27, 42, 50, the majority seems to suggest that the words "would be" marked the beginning of an insidious plot by the State to back out of the plea agreement. I find this proposition difficult to accept. Because the assistant district attorney at sentencing was not the same attorney who represented the State at the plea hearing, I suggest that the words "would be" were at most a verbal hesitation to ensure that the prosecutor articulated the precise terms of the agreement, rather than the unveiling of some vile scheme. Taken as a whole, I would find that the prosecutor's statement accurately reflected the plea agreement.

¶ 73. I also disagree with the majority's treatment of the line of court of appeals cases that deal with this issue. For instance, in *Poole,* 131 Wis. 2d 359, the court of appeals recognized that the primary transgression in the breach of a plea agreement is the use of negative or qualified language when making the sentencing recommendation. *Id.* at 364. Similarly, any negative facts relayed to the court must not be rendered in a less-than-neutral manner. *Id.* In *Poole,* the prosecutor followed his agreed-to sentencing recommendation immediately by noting that the recommendation was agreed to " 'before we knew of the other instances. But that is our agreement' ". *Id.* at 360. The court held this to be a breach of the plea agreement. *Id.* at 364.

¶ 74. In the present case, this type of qualification simply did not occur. The prosecutor's discussion of the contents of the PSI was a neutral recitation of the facts, to which the court was entitled. The recommendation was not couched in qualifying terms, and at no time did

the prosecutor suggest that her recommendation had changed on account of the information in the PSI.

¶ 75. I find that this case is much more similar to *State v. Hanson,* 2000 WI App 10, 232 Wis. 2d 291, 606 N.W.2d 278 (Ct. App. 1999), than *Poole.* In *Hanson,* the prosecutor stated several times that she " 'certainly [stood] by the plea agreement' " and that she did not intend to " 'contravene the plea agreement in any way.' " *Id.* at ¶ 26. After affirming the State's recommendation, the prosecutor went on to describe the violent nature of Hanson's crime, then stated:

> Judge, there was a plea agreement in this case; I stand by the plea agreement. Having said that, this is an extremely violent case. This is an individual who constitutes a clear and present danger, not only to the two women who have been in intimate relationships with the Defendant, but also to the community at large. I urge the Court to consider all of the information that has been presented to the Court, in fashioning a sentence that is both fair to the Defendant and to the victim.

*Id.* at ¶ 9. In finding that the State had not breached the plea agreement, the *Hanson* court noted that the prosecution had "strongly affirmed the plea agreement and did not make any statements that expressly, covertly or otherwise suggested that the State no longer adhered to the agreement." *Id.* at ¶ 29. The court held that the remarks had not been "a less than neutral statement of its sentencing recommendation under the plea agreement." *Id.* at ¶ 30.

¶ 76. This is almost exactly what happened in the present case. Here, the prosecutor clearly stated that she supported her plea recommendation, despite the fact that the information from the PSI was negative. At no time did the State back away from its agreement or

express reservations about its recommendation, as the majority suggests. *See* majority op. at ¶ 49. When a question arose as to whether the State was reneging on the plea agreement, the prosecutor clearly restated the State's recommendation. Rather than back away from the recommendation, the prosecutor affirmed it.

¶ 77. Likewise, in *State v. Ferguson,* the prosecutor was found not to have breached a plea agreement when he spoke at some length about the severity of the offense, characterized the defendant's actions as "perverted" and "the sickest case I have seen," and described the defendant as a "sleaze." *Ferguson,* 166 Wis. 2d at 319–20. The court held that given the unique structure of the plea agreement—that the State had agreed to recommend an imposed and stayed sentence, but was allowed to argue for the maximum-length sentence— the State could bring relevant aggravating factors to the court's attention without breaching the plea agreement. *Id.* at 324–25. The *Ferguson* court noted that "pertinent [sentencing] factors relating to the defendant's character . . . cannot 'be immunized by a plea agreement between the defendant and the state.' " *Id.* at 324 (quoting *Elias v. State,* 93 Wis. 2d at 285).

¶ 78. The plea agreement here is not nearly as unusual, but the prosecutor was similarly able to remain true to her recommendation. Using language much milder language than that used in *Ferguson,* the prosecutor stated her recommendation, and affirmed it several times, despite relaying the negative information about Williams from the PSI.

¶ 79. *State v. Jorgensen,* 137 Wis. 2d 163, 404 N.W.2d 66 (Ct. App. 1987), likewise supports the holding that the State did not breach the agreement. *Jorgensen* involved the interpretation of the terms of a prosecutor's agreement to "stand silent" at a sentencing

hearing. *Id.* at 169–71. Applying principles of contract law, the court noted that such an agreement did not prevent the prosecutor from commenting if the defendant were to make errors of fact or law, as such an interpretation would have been against public policy. *Id.* at 170–71. The majority seems to imply that *Jorgensen* limits a prosecutor to correcting factual errors. This was not the holding in that case. Rather, *Jorgensen* further supports the principle that the prosecutor is not required to remain silent regarding information relevant to the sentencing court.

¶ 80. Finally, the majority's comparison of this case to *State v. Smith,* 207 Wis. 2d 258, is simply unreasonable. In *Smith,* the prosecutor had agreed to make no sentencing recommendation in exchange for a no contest plea and instead recommended a sentence of 58 months at the sentencing hearing. *Id.* at 272. This was a blatant violation of the unambiguous terms of a plea agreement, the likes of which did not occur in this case. Here, the prosecutor agreed to recommend that Williams receive three years probation, a payment of all arrearages and current child support, and 60 days in jail as a condition of probation. This is what the State recommended—three times.

¶ 81. In sum, I would hold that the plea agreement was not breached, let alone materially and substantially breached, because Williams did not lose the benefit for which he had bargained. Williams agreed to plead guilty in exchange for a recommendation from the State that he pay all arrearages, receive a sentence of probation, and serve 60 days in jail as a condition. This is what he got.

¶ 82. By finding that the State materially breached its plea agreement with Williams, the court sets a worrisome precedent. Despite this court's long-

standing affirmation that a trial court is entitled to all relevant sentencing information, the court today would severely deter prosecutors from bringing negative but relevant information to the court's attention. As a result, the courts will be less able to sentence a defendant based on a full and fair consideration of the pertinent facts. As Judge Nettesheim pointed out in his dissent in the court of appeals, the prosecutor should not be turned into the proverbial " 'potted plant' " and should not be forced to withhold information that is relevant to sentencing. *State v. Williams,* 2001 WI App 7, ¶ 27, 241 Wis. 2d 1, 624 N.W.2d 164. Finding that the prosecutor breached her agreement to Williams will do precisely that.

¶ 83. Likewise, this decision will discourage prosecutors from providing such information out of a fear of losing the benefit of their plea agreements. By forcing a prosecutor to choose between remaining silent at a sentencing hearing, or potentially breaching the plea agreement, prosecutors will likely become wary of making information available to the court. Furthermore, they may be reluctant to enter into plea agreements altogether, and thereby deprive defendants, the public, and the criminal justice system of their benefits. As the U.S. Supreme Court stated in *Santobello v. New York:*

> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances what-

ever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

404 U.S. 257, 261 (1971).

¶ 84. In conclusion, I would find that the State upheld its end of the plea agreement by clearly stating and standing by its sentencing recommendation. Additionally, I would find that the prosecutor presented the information from the PSI in a neutral manner, and never adopted the recommendation of the PSI writer. The information from the PSI was relevant to sentencing, however, and its provision was consistent with the strong public policy of ensuring that the court is fully informed of all sentencing factors. There was no material and substantial breach of the plea agreement. Accordingly, I would reverse the decision of the court of appeals and would reinstate Williams' sentence as determined by the circuit court.

¶ 85. For the foregoing reasons, I respectfully dissent.

¶ 86. I am authorized to state that Justices N. PATRICK CROOKS and DIANE S. SYKES join this dissent.