State of Wisconsin, Plaintiff-Respondent,
v.
Jerome M. Zimmermann, Defendant-Appellant.
No. 04-1612-CR.
Court of Appeals of Wisconsin.
March 17, 2005.
Before Dykman, Lundsten and Higginbotham, JJ.
¶1 PER CURIAM.
Jerome Zimmermann appeals judgments convicting him of three felonies and a misdemeanor, and an order denying postconviction relief. The convictions resulted from Zimmermann's guilty pleas to the charges. The dispositive issue is whether the State breached its agreement to recommend probation in exchange for Zimmermann's pleas. We conclude that no breach occurred, and therefore affirm.
¶2 In addition to the agreement on sentencing, in exchange for the plea the State dismissed eight other charges and all repeater allegations. At sentencing, the prosecutor recommended probation, as agreed. However, Zimmermann contends that the following comments by the prosecutor breached the plea agreement by undermining that recommendation:
[AMY FOREHAND, the prosecutor:] I looked at the character of the offender and, quite frankly, the P.S.I. does not show much of anything positive about his character. It outlines a significant criminal history back to 1972, which is the year I was born, so 32 years of criminal history by Mr. [Zimmermann], and it appears the only time he is not committing crimes is when he's incarcerated.
In the past his compliance on probation has been poor at best. In the narrative outlines several violations that he committed on previous probation periods including picking up new crimes while on probation. According to the P.S.I., in addition[] to his criminal troubles he is a deadbeat dead [sic].
....
I also believe that when asked of the seriousness of these offenses that it seems to be a general pattern of conduct for the defendant. He's already been convicted for and sentenced to prison for theft by contractor once before. Well here we're dismissing and reading in that charge. The conduct that was described in the P.S.I. regarding that incident [is] very similar to the two incidents that we're here today on.
....
... All these charges show a history of this type of behavior by the defendant which makes these offenses, I believe, to be even more serious in nature.
... I do want to believe that people can be changed, that with the right intervention, the right help, they can change their ways; however, after reading the P.S.I., I really do not have any hope that rehabilitation is possible for the defendant. I believe he always has been a con artist and always will be and it appears the public is only safe when the defendant is incarcerated.
¶3 The prosecutor's alleged breach became an issue when the trial court sentenced Zimmermann to prison, including six years of initial confinement. In postconviction proceedings, Zimmermann raised the issue by way of an ineffective-assistance-of-counsel claim, because he believed that trial counsel did not adequately preserve the issue. The trial court concluded that there was no breach and therefore no prejudice from counsel's performance and denied postconviction relief.
¶4 The defendant has a constitutional right to enforcement of a negotiated plea agreement. State v. Williams, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733. Consequently, a defendant may be entitled to resentencing if the State materially and substantially breaches the agreement. Id., ¶38. A material and substantial breach is one that defeats the benefit for which the defendant bargained. Id. When the State agrees to recommend a particular sentence, the prosecutor may not undermine that agreement by covertly implying that a more severe sentence is warranted than that recommended. Id., ¶42.
¶5 Whether the prosecutor's conduct constitutes a breach of the plea agreement is a question of law, which we decide independently of the circuit court. Id., ¶5. To evaluate the prosecutor's allegedly prejudicial remarks, we must examine the entire sentencing proceeding. Id., ¶46.
¶6 Viewed as a whole, the prosecutor's remarks did not undermine the plea agreement and therefore did not breach it. After the comments quoted above, which clearly present an unfavorable view of Zimmermann, the prosecutor recommended probation because it would at least give the principal victim a chance at restitution. The prosecutor stated:
If he was sent to prison, while there's some work opportunities in prison, they pay very little, 50 cents to a dollar an hour the last I heard. That even if money was coming in, this would be coming in trickling for the defendant, I mean for the victims, and my thought and my rationale is that probation and conditional time may be the best tool available to try to get to them quicker, faster any money that we may have in front of us, and my thought was is that with probation for several years he'll be under supervision to make sure he can't go out and work on his own, and if he is having these screw ups and he's not paying his restitution, he can always be revoked and sent to prison at that time because if he's proving himself not to accomplish that I would hope with being on probation he still would be facing a significant amount of jail come resentencing on revocation. So that is my rationale for why I recommended [what] I did.
(Emphasis added.) Thus, the prosecutor provided not only a persuasive reason to place Zimmermann on probation, but in view of Zimmermann's record the only plausible grounds to do so. The presentence investigation report listed at least thirteen criminal convictions dating back many years.[1] The resulting punishments included two prison terms, one revoked probation, and one extended probation. The author of the presentence report noted Zimmermann's overall poor performance on probation and parole, and added the following comment:
What is the most disturbing is the high level of criminality, anti-social behavior, and lack of remorse for [Zimmermann's] victims. He continues to manipulate and exploit people for his own monetary gain. He has been very secretive and unwilling to come forward regarding what he has done with this money he stole from his victims. It appears he has paid off his court traffic fines and child support arrearages with this money, as this agent verified through CCAP. Given his continual pattern of theft by contractor and worthless checks, the public will remain to be [sic] at risk while he is on the streets.
¶7 In sum, while the prosecutor presented unfavorable facts about Zimmermann, and certainly facts that would justify a prison sentence, she also provided the only sensible reason to place Zimmermann on probation.
By the Court.  Judgments and order affirmed.
NOTES
[1] The report actually lists seventeen proceedings resulting in judgment. The charge and disposition listed in four of them suggest they might have been ordinance violation cases.